STATE of Tennessee, Appellant,

v.

John David TERRY, Appellee.

Supreme Court of Tennessee, at Nashville.

July 1, 1991.

Charles W. Burson, Atty. Gen. & Reporter, Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, for appellant.

Michael E. Terry, Lionel R. Barrett, Jr., Nashville, for appellee.

## OPINION

ANDERSON, Justice.

The defendant was convicted of common-law first degree murder and arson. At the conclusion of the sentencing hearing, the jury found that two of the aggravating circumstances set out in Tenn.Code Ann. § 39-2-203 (1982) existed: (1) that the murder was especially heinous, atrocious, or cruel, and (2) that the murder was committed while the defendant was engaged in committing a larceny. The jury further determined that the mitigating circumstances did not outweigh the aggravating circumstances and imposed the death penalty. The trial court denied the defendant's motion for a new trial of the guilt/innocence issue, but granted a new sentencing hearing, after determining that it had erroneously charged to the jury the aggravating circumstance that the murder was committed while the defendant was engaged in committing a larceny. We granted the State's application for interlocutory appeal in which the State argues that the trial court erred in granting the defendant a new sentencing hearing. We disagree and affirm.

## FACTS

The essential facts are summarized from the trial judge's memorandum opinion as follows:

The defendant, John David Terry, was the pastor of the Emmanuel Church of Christ Oneness Pentacostal in Nashville, Tennessee. Early in 1987, the defendant began misappropriating funds that belonged to the church and developed an elaborate plan to adopt a totally new identity and disappear. He used the stolen funds to purchase a motorcycle and hoarded a substantial amount of cash. He also took out several insurance policies on his life, obtained identification under the assumed name of Jerry Milom, and purchased the motorcycle using that identity.

On June 15, 1987, the defendant planned a fishing trip with the church handyman, James Matheney. Matheney and the defendant went to the church, where the defendant killed Matheney by a pistol shot to the head. In an effort to hide Matheney's identity and to convince the authorities that Matheney's body was in fact the body of the defendant, the defendant severed the head and one forearm of the victim, and removed skin containing tattoos from the victim's upper arms. The defendant placed his own belt on the body, left his shoes nearby, and set fire to the church, hoping that authorities would believe that the charred or destroyed body was that of defendant himself.

Having set fire to the church, the defendant, now with the assumed identity of Jerry Milom, mounted his motorcycle and rode to Memphis. He carried the victim's head with him, and apparently sank it in Kentucky Lake on his way to Memphis. The head was never recovered.

The defendant's hope that the authorities would believe that he was dead, and that Matheney was the killer, went awry when the fire department responded quickly to the church fire. Through happenstance, the first water placed through a second story window fell on a wall just above the body and, therefore, preserved a sufficient amount of the body so that it was positively identified as the victim, James Matheney, rather than the defendant Terry. Upon arrival in Memphis, the defendant realized that his elaborate scheme had been discovered. He returned to Nashville, hired an attorney, and surrendered to authorities.

With respect to the misappropriation of church funds, the record shows that in March of 1987, the defendant, as agent for the church, received a check for $50,000.00 made out to the church, representing the proceeds from the sale of church property. Through a series of transactions, the defendant took a substantial amount of this money for his own use. Five thousand dollars ($5,000) was used by the defendant for the purchase of the motorcycle to facilitate his "disappearance." Fifteen thousand dollars ($15,000) was taken in cash by the defendant, and the remainder was left in the defendant's personal joint checking account, which he shared with his wife. While the State and the defendant both interpret the facts somewhat differently, the trial judge found in his memorandum opinion that the last transaction which might be interpreted as a misappropriation of church funds, was the defendant's transfer of two thousand dollars ($2,000) from a church account to his joint account on June 11, 1987, four days before the murder.

A number of witnesses testified on behalf of the defendant at the sentencing hearing that during his years as a minister, he had contributed to and cared for members of his congregation and other acquaintances. Evidence was also presented indicating that he had no prior criminal record and had been a good husband and good father to his two children. In addition, a psychiatrist and a clinical psychologist testified that he was suffering substantial mental impairment at the time of the commission of the murder.

## AGGRAVATING CIRCUMSTANCES; SUFFICIENCY OF THE EVIDENCE

■ At the conclusion of the sentencing hearing, the trial judge instructed the jury pursuant to Tenn.Code Ann. § 39–2–203 (1982), which provided:

(e) After closing arguments in the sentencing hearing, the trial judge shall include in his instructions for the jury to weigh and consider any mitigating circumstances and any of the statutory aggravating circumstances set forth in sub-

section (i) of this section which may be raised by the evidence at either the guilt or sentencing hearing, or both. These instructions and the manner of arriving at a sentence shall be given in the oral charge and in writing to the jury for its deliberations.

. . . .

(i) No death penalty shall be imposed but upon a unanimous finding, as heretofore indicated, of the existence of one or more of the statutory aggravating circumstances, which shall be limited to the following:

. . . .

(5) The murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind;

. . . .

(7) The murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any first degree murder, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb; . . . .

It is the latter circumstance, subsection (i)(7), which is at issue in this interlocutory appeal.

Specifically, the trial judge instructed the jury that it could find that the murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit larceny. Upon consideration of the defendant's motion for new trial and a new sentencing hearing, the trial judge concluded that the jury was warranted in finding that a larceny had occurred. Nevertheless, the trial judge was of the opinion that the state did not prove that "the murder was committed while the defendant was engaged [in the commission of a] larceny" as required by subsection (7). For this reason, the trial judge granted the defendant's motion for a new sentencing hearing.

Cases from other jurisdictions discussing the issue of sufficiency of the evidence of similar statutory aggravating circumstances, are annotated at 67 A.L.R.4th 887 (1989). The annotator states:

Whether the evidence supports a finding that the murder was committed in the course of, during, or while engaged in the commission of another felony, for purposes of a death penalty aggravating circumstance, generally depends on an analysis of the temporal, spatial and motivational relationships between the capital homicide and the collateral felony, as well as on the nature of the felony and the identity of its victim.

67 A.L.R.4th at 892.

In his memorandum opinion granting the new sentencing hearing, the trial judge quoted the following comment by the author of the present Tennessee death penalty statute:

Aggravating circumstances six, seven, and eight deal with defendants who commit murder during the course of other crimes or while the defendants are in custody or escaping from custody. These aggravating circumstances are based on the Georgia and Florida statutes as well as the Model Penal Code. While the seventh aggravating circumstance bears the similarity to the felony murder rule under the definition of first

degree murder, there is no prohibition against using this as a further aggravation of the crime. It should be noted that the defendant in *Gregg [v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) ]* was convicted under the felony murder rule which is much broader in Georgia than as drafted in this act. The jury in that case found as the aggravating circumstance that the murder was committed during the course of the armed robbery and the death sentence was imposed. The seventh aggravating circumstance however serves a different purpose than the felony murder rule. The latter serves to supply the requisite intent to commit the crime or kill which murder requires.... *However, the seventh aggravating circumstance deals with an individual who commits an armed robbery and other similar felonies and kills the person victimized by the other crime. In short, this aggravating circumstance seeks to deter "witness killings."*

Raybin, *New Death Penalty Statute Enacted for Tennessee*, Judicial Newsletter, University of Tennessee College of Law (May, 1977) (emphasis added).

Since the passage of Tennessee's present death penalty statute in 1977, this Court has approved the imposition of sentences of death based entirely[1] or partially[2] upon

---

1. *See, e.g., State v. Wright*, 756 S.W.2d 669 (Tenn.1988); *State v. Harbison*, 704 S.W.2d 314 (Tenn.1986); *State v. Barnes*, 703 S.W.2d 611 (Tenn.1985); *State v. Smith*, 695 S.W.2d 954 (Tenn.1985); *State v. Matson*, 666 S.W.2d 41 (Tenn.1984); *State v. Laney*, 654 S.W.2d 383 (Tenn.1983); *State v. Simon*, 635 S.W.2d 498 (Tenn.1982).

2. *See, e.g., State v. Bates*, 804 S.W.2d 868 (Tenn. 1991); *State v. Boyd*, 797 S.W.2d 589 (Tenn. 1990); *State v. Teel*, 793 S.W.2d 236 (Tenn. 1990); *State v. Alley*, 776 S.W.2d 506 (Tenn. 1989); *State v. Cauthern*, 778 S.W.2d 39 (Tenn. 1989); *State v. Taylor*, 774 S.W.2d 163 (Tenn. 1989); *State v. Thompson*, 768 S.W.2d 239 (Tenn.1989); *State v. West*, 767 S.W.2d 387 (Tenn.1989); *State v. Barber*, 753 S.W.2d 659 (Tenn.1988); *State v. Bell*, 745 S.W.2d 858 (Tenn.1988); *State v. Hines*, 758 S.W.2d 515 (Tenn.1988); *State v. Irick*, 762 S.W.2d 121 (Tenn.1988); *State v. Johnson*, 762 S.W.2d 110 (Tenn.1988); *State v. Poe*, 755 S.W.2d 41 (Tenn. 1988); *State v. Smith*, 755 S.W.2d 757 (Tenn.

1988); *State v. Bobo*, 727 S.W.2d 945 (Tenn. 1987); *State v. Claybrook*, 736 S.W.2d 95 (Tenn. 1987); *State v. House*, 743 S.W.2d 141 (Tenn. 1987); *State v. Sparks*, 727 S.W.2d 480 (Tenn. 1987); *State v. Carter*, 714 S.W.2d 241 (Tenn. 1986); *State v. King*, 718 S.W.2d 241 (Tenn. 1986); *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985); *State v. Hartman*, 703 S.W.2d 106 (Tenn. 1985); *State v. Johnson*, 698 S.W.2d 631 (Tenn. 1985); *State v. King*, 694 S.W.2d 941 (Tenn. 1985); *State v. Zagorski*, 701 S.W.2d 808 (Tenn. 1985); *State v. Williams*, 690 S.W.2d 517 (Tenn. 1985); *State v. Campbell*, 664 S.W.2d 281 (Tenn. 1984); *State v. Caruthers*, 676 S.W.2d 935 (Tenn. 1984); *State v. McKay*, 680 S.W.2d 447 (Tenn. 1984); *State v. Sample*, 680 S.W.2d 447 (Tenn. 1984); *State v. Workman*, 667 S.W.2d 44 (Tenn. 1984); *State v. Buck*, 670 S.W.2d 600 (Tenn. 1984); *State v. Sheffield*, 676 S.W.2d 542 (Tenn. 1984); *State v. Coe*, 655 S.W.2d 903 (Tenn.1983); *State v. Harries*, 657 S.W.2d 414 (Tenn.1983); *State v. Johnson*, 661 S.W.2d 854 (Tenn.1983); *State v. Morris*, 641 S.W.2d 883 (Tenn.1982); *State v. Johnson*, 632 S.W.2d 542 (Tenn.1982);

the subsection (i)(7) aggravating circumstance in over fifty cases. However, none is factually similar to the present case. All involved the murders of either victims or witnesses of a felony listed in aggravating circumstance (i)(7), or a police officer attempting to apprehend the defendant. Moreover, all were committed with close temporal proximity to the commission of the aggravating felony.

In contrast, the victim here, James Matheney, was not a witness to or a victim of the larceny; nor was he killed because he was in close proximity to the larceny; nor was he killed because he tried to thwart the larceny, expose the larceny, or interfere in any way with the commission of the larceny. We agree with the trial judge that "the nexus between the two crimes is not the type of connection that is within the scope of ... T.C.A. § 39–2–203(i)(7)." Consequently, we hold that the jury charge of aggravating circumstance (i)(7) was erroneous.

## HARMLESS ERROR ANALYSIS

■ Finally, the State argues that the trial court erred in holding that any error was prejudicial, as opposed to mere harmless error.

> Although not every imperfection in the deliberative process is sufficient, even in a capital case, to set aside a state-court judgment, the severity of the sentence mandates careful scrutiny in the review of any colorable claim of error.

*Zant v. Stephens*, 103 S.Ct. 2733, 2747, 462 U.S. 862, 885, 77 L.Ed.2d 235 (1983).

In *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), upon the defendant's conviction of murder, the jury found that two aggravating circumstances outweighed any mitigating circumstances, and sentenced the defendant to death. The aggravating circumstances found by the jury were similar to those found by the jury in this case, i.e. that the murder was "especially heinous, atrocious

State v. Coleman, *619 S.W.2d 112 (Tenn.1981);*
State v. Dicks, *615 S.W.2d 126 (Tenn.1981);*
State v. Strouth, *620 S.W.2d 467 (Tenn.1981);*
State v. Moore, *614 S.W.2d 348 (Tenn.1981);*

or cruel," and that the murder was committed during the perpetration of another felony. On appeal to the Mississippi Supreme Court, Clemons successfully argued that the "especially heinous" circumstance was invalid due to an error of constitutional magnitude. The Mississippi Supreme Court, however, affirmed Clemons' sentence of death upon concluding that the error was harmless beyond a reasonable doubt. The United States Supreme Court held that the Federal Constitution is not violated by an appellate court's harmless error analysis, even where one of two aggravating circumstances was unconstitutionally submitted to the jury. "What is important ... is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Id.* at 1450 (emphasis in original) (citation omitted). On the other hand, the Supreme Court recognized that "in some situations, a state appellate court may conclude that peculiarities in a case make appellate reweighing or harmless error analysis extremely speculative or impossible." *Id.* at 1451.

> It would be the rare case, however, in which it could truly be said beyond a reasonable doubt that a sentencing decision would have been the same in the absence of an invalid aggravating circumstance. Harmless-error analysis would be especially problematic (if not impossible) *in Mississippi where the jury is not required to make written findings concerning mitigating circumstances,* and where the jury need not impose a death sentence even if aggravating factors outweigh those in mitigation.

*Id.* at 1461, n. 23 (emphasis added) (concurring and dissenting opinion). Just like the Mississippi statute, Tennessee's death penalty statute provided no requirement that the jury make written findings of mitigating circumstances. Tenn.Code Ann. § 39–2–203(g) (1982). In the absence of such written findings, we agree that it is espe-

State v. Pritchett, *621 S.W.2d 127 (Tenn.1981);*
State v. Houston, *593 S.W.2d 267 (Tenn.1980);*
State v. Cozzolino, *584 S.W.2d 765 (Tenn.1979).*

cially difficult for an appellate court to conclude that an invalid finding of an aggravating circumstance is harmless beyond a reasonable doubt.

It is true that this Court has previously applied a harmless error analysis to affirm a death sentence where the evidence was held insufficient to support one of several aggravating circumstances charged to the jury. In *State v. Bobo*, 727 S.W.2d 945 (Tenn.1987), for example, after invalidating one of three aggravating circumstances found by the jury, we held that:

> Given that the two other aggravating circumstances are fully supported by the record and that little evidence of any mitigating circumstances exists, ... in view of the nature and circumstances of this murder and considering defendant's admissible record, after careful consideration we are of the opinion that if any error was committed by the jury, it was harmless beyond a reasonable doubt in view of multiple aggravating circumstances which are clearly established.

*Id.* at 956 (citation omitted). *See also State v. Workman*, 667 S.W.2d 44 (Tenn.1984); *State v. Cone*, 665 S.W.2d 87 (Tenn.1984); *State v. Campbell*, 664 S.W.2d 281 (Tenn. 1984).

The present case, however, is much more analogous to *State v. Pritchett*, 621 S.W.2d 127 (Tenn.1981), in which the jury found two aggravating circumstances, one of which was unsupported by the evidence. Mitigating evidence that the defendant was in a state of emotional turmoil at the time of the killing was also presented. This Court held:

> We have no way of knowing and cannot speculate whether the jury would have imposed the death penalty with one of the two aggravating circumstances withdrawn from their consideration and with the necessity of weighing the one remaining aggravating circumstance against the mitigating circumstances.

*Id.* at 139. *See also State v. Williams*, 690 S.W.2d 517 (Tenn.1985); *State v. Adkins*, 653 S.W.2d 708 (Tenn.1983); *State v. Johnson*, 661 S.W.2d 854 (Tenn.1983); *State v. Moore*, 614 S.W.2d 348 (Tenn.1981).

Now it is settled law that "the penalty of death is qualitatively different" from any other sentence, *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2291 [49 L.Ed.2d 944] (1976) (plurality opinion), and that "*this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed,*" *Lockett v. Ohio*, 438 U.S. [586] at 604, 98 S.Ct. [2954] at 2964 [57 L.Ed.2d 973] [ (1978) ] (plurality opinion).

*Clemons v. Mississippi, supra,* 494 U.S. at ——, 110 S.Ct. at 1461 (concurring and dissenting opinion) (emphasis added).

Considering the heightened need for reliability in death cases, the presence of several mitigating circumstances and only one valid aggravating circumstance,

> we have no certain way of knowing whether the jury would have sentenced appellant to death if they had not considered [the erroneous instruction of aggravating circumstance (i)(7) ].

*State v. Teague*, 645 S.W.2d 392, 399 (Tenn. 1983). Therefore,

> the probability of prejudice resulting from the consideration of the [improper jury charge], in our opinion requires that the sentence of death be reversed and the cause remanded ... for a sentencing hearing. *State v. Teague*, 645 S.W.2d 392, 399 (Tenn.1983).

*State v. Williams*, 690 S.W.2d 517, 533 (Tenn.1985). *See also State v. Adkins*, 653 S.W.2d 708 (Tenn.1983); *State v. Johnson*, 661 S.W.2d 854 (Tenn.1983); *State v. Moore*, 614 S.W.2d 348 (Tenn.1981); *State v. Pritchett*, 621 S.W.2d 127 (Tenn.1981).

For these reasons, we hold that the erroneous instruction of aggravating circumstance (i)(7) was not harmless error beyond a reasonable doubt. Consequently, the order of the trial judge granting the defendant a new sentencing hearing is affirmed. Costs are assessed to the state.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.