FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE
(HEARD AT COLUMBIA)

**FILED**

**December 15, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

STEVE HENLEY,                          (
                                       (
          Appellee,                    (
                                       (  Jackson Criminal
                                       (
v.                                     (  Hon. J. O. Bond, Judge
                                       (
                                       (  S. Ct. No. 01S01-9703-CC-00056
STATE OF TENNESSEE,                    (
                                       (
          Appellant.                   (


**DISSENTING OPINION**


          I dissent from the majority's decision that the

petitioner in this case received effective assistance of counsel.


          Even though the trial court denied the petition for

relief, that court obviously was not pleased with counsel's

performance and attributed counsel's failure to call any witnesses

other than petitioner's grandmother to "trial strategy."  In

announcing his decision, the court stated:  "I would have liked to

have had another witness maybe to have been put on.  I would have

liked for the mother to have testified when she refused."  And

again:  "I would have liked to have seen another witness or two,

but that's trial strategy."

The Court of Criminal Appeals found that counsel's performance at the sentencing phase of the trial was deficient and also prejudicial, and the case was remanded by that court to the trial court for a new sentencing hearing. In support of my dissent, I rely upon the following portions of the Court of Criminal Appeals' opinion, which was written by Judge John H. Peay, with Presiding Judge Joe B. Jones and Special Judge Joseph H. Walker concurring:

> With respect to the sentencing phase of the trial, however, we find that Mr. Reneau's investigation and preparation were constitutionally deficient. Our Court has recognized that

> > '[a] lawyer also has a substantial
> > and important role to perform in
> > raising mitigating factors both to
> > the prosecutor initially and to the
> > court at sentencing. This cannot
> > effectively be done on the basis of
> > broad general emotional appeals or on
> > the strength of statements made to
> > the lawyer by the defendant.
> > Information concerning the
> > defendant's background, education,
> > employment record, mental and
> > emotional stability, family
> > relationships, and the like, will be
> > relevant, as will mitigating
> > circumstances surrounding the
> > commission of the offense itself.
> > Investigation is essential to
> > fulfillment of these functions.'

> _Adkins v. State_, No. 03C01-9106-CR-00164, pp. 42-3, Washington County (Tenn. Crim. App. filed December 2,

1994, at Knoxville) (citation omitted). Personal background and character information are highly relevant at a capital sentencing hearing "because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." California v. Brown, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring).

Although many of Henley's family members, including his mother, testified at the post-conviction hearing that they would have been willing to testify on Henley's behalf had they been asked, Mr. Reneau spoke to none of them prior to the sentencing hearing. Mr. Reneau called the petitioner's mother to the stand at the sentencing hearing without ever having spoken to her about testifying. Not understanding what was expected of her, she refused - in front of the jury - to testify. We do not think it is assuming too much to conclude that a jury is going to be prejudiced against a defendant upon that person's own mother refusing to testify on his or her behalf.[1]

Had they been prepared and called at the

---

[1]In the petitioner's offer of proof at the post-conviction hearing, one juror was quoted as saying, "If a man's own mother won't testify on his behalf then we know what we've got to do."

sentencing hearing, Henley's family members would have testified that they loved the petitioner; that he was a good and loving man; that he was not a violent man; that the offenses of which he was convicted were totally out of character for him; and that they were shocked by his arrest. They would have pled for his life. Additionally, the petitioner produced evidence at the post-conviction hearing that other potentially mitigating evidence existed that would have been discovered had Mr. Reneau conducted a more thorough investigation. Expert testimony indicated the possibility that Henley had suffered from depression, alcohol and drug abuse, and learning disabilities. In grade school, Henley's I.Q. tested at 89. He dropped out of high school after the tenth grade. Not long before the murders, Henley suffered severe financial losses, was forced to file bankruptcy, and lost the family farm. All of this would have been proper testimony for mitigation. Eddings v. Oklahoma, 455 U.S. 104, 117 (1982) (the Constitution requires the sentencer to "consider and weigh all of the mitigating evidence concerning the petitioner's family background and personal history.") (O'Connor, J., concurring); Lockett v. Ohio, 438 U.S. 586 (1978).

In spite of all the mitigating evidence available, only two people testified on Henley's behalf at the sentencing hearing: Henley himself and his

grandmother. The jury had already indicated that it did not believe Henley when it convicted him. Accordingly, it is reasonable to presume that Henley's testimony at his sentencing hearing would not have been particularly persuasive. It is also possible, if not likely, that Henley's grandmother was viewed with a certain amount of hostility because Flatt testified that it was on her behalf that Henley had felt compelled to attack the Staffords. Thus, of all the people that Mr. Reneau had available to him, the only two that testified were arguably the two least helpful.

"When the record shows a substantial deficiency in investigation, the normal deference afforded trial counsel's strategies is particularly inappropriate . . . . [This] Court will not credit a strategic choice by counsel when counsel 'did not even know what evidence was available.'" Cooper v. State, 847 S.W.2d at 530 (citation omitted). The record in this case shows such a substantial deficiency. No psychological or psychiatric evaluation was done on Henley. Other than Henley's grandmother, Mr. Reneau did not speak with Henley's family members prior to the sentencing hearing. There is no evidence from Mr. Reneau's file or otherwise that he investigated Henley's educational background, employment history, or that he spoke with members of the community familiar with Henley. He "'should have investigated his

-5-

background, checked his school records, . . . his medical history, tried to find witnesses to demonstrate all aspects of his character. [He] should have requested a psychological evaluation.'" Bell v. State, No. 03C01-9210-CR-00364, p. 42, Hamilton County (Tenn. Crim. App. filed March 15, 1995, at Knoxville), cert. denied, (quoting the court below).

While we have held that Mr. Reneau's failure to investigate his client's mental health was not ineffective assistance of counsel with respect to the guilt phase of this trial, we do find that it was ineffective with respect to the sentencing phase.

> "[T]here is a qualitative difference between obtaining psychological information for the purpose of preparing a defense to the charges and using such evidence for the purpose of mitigating the punishment. Thus, it is not incompatible to present evidence of psychological or mental impairment during sentencing, even where a defense of factual innocence has been interposed at the guilt phase."

Bell v. State, supra at 46 (citation omitted). Combined with Mr. Reneau's failure to investigate Henley's family's availability and willingness to testify, and his failure to investigate other aspects of Henley's past, Mr. Reneau failed to meet the level or competence required by attorneys representing clients at the

sentencing phase who are faced with the death penalty. See State v. Terry, 813 S.W.2d 420, 425 (Tenn. 1991) (the qualitative difference between the death penalty and all other punishments requires greater reliability in the sentencing determination).

We also find that Mr. Reneau's deficient performance at the sentencing phase prejudiced the petitioner. The petitioner made an offer of proof at the post-conviction hearing that the jury considered the fact that Henley's mother refused to testify on her son's behalf. Even without this offer of proof, we hold that the dearth of favorable testimony offered at the sentencing hearing, when significant amounts of favorable testimony were available, establishes a reasonable probability that, but for Mr. Reneau's deficient performance with respect to the sentencing phase of Henley's trial, the result of the proceeding would have been different.[2]

This well reasoned opinion by the Court of Criminal Appeals compels the conclusion that the petitioner was denied effective assistance of counsel guaranteed by the state and federal constitutions and therefore is entitled to a new sentencing hearing.

---

[2]Unlike State v. Melson, 772 S.W.2d 417 (Tenn. 1989), this was not a case where the available mitigation evidence had already been presented during the guilt phase of the petitioner's trial.

I am authorized to state that Justice Birch joins in this Dissenting Opinion.

_____
Reid, J.