[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM AND ORDER
The petitioner here is under sentence of death with his execution being stayed by order of the Supreme Court of the United States. The petitioner murdered Patrick Daniels in February of 1986. The trial took place in 1987 and the conviction and death sentence were affirmed on appeal inState v. Jones, 789 S.W.2d 545 (Tenn. 1990) cert. denied, 498 U.S. 908,111 S.Ct. 280 (1990). The petitioner filed his petition for post-conviction relief on February 26, 1991, which was denied by this Court after a three (3) day hearing by Memorandum and Order dated August 29, 1993. That dismissal was affirmed on appeal[1] and many of petitioner's assertions were ultimately rejected. See Abdur'Rahman v.Bell, 226 F.3d 696 (6th Cir. 2000) cert. denied, 122 S.Ct. 386 (2001).
On April 4, 2002, the petitioner filed a motion to reopen his post-conviction case pursuant to T.C.A. § 40-30-217. That statute states in part:
(a) A petitioner may file a motion in the trial court to reopen the first post-conviction petition only if the following applies:
(1) The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. Such motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial; or
(2) The claim in the motion is based upon new scientific evidence establishing that such petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or
(3) The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the motion must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid; and
(4) It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.
(b) The motion must set out the factual basis underlying its claims and must be supported by affidavit. The factual information set out in the affidavit shall be limited to information which, if offered at an evidentiary hearing, would be admissible through the testimony of the affiant under the rules of evidence. The motion shall be denied unless the factual allegations, if true, meet the requirements of subsection (a). If the court grants the motion, the procedure, relief and appellate provisions of this part shall apply.
The motion to reopen was accompanied by a motion to stay the petitioner's execution. The Court held a hearing on April 8, 2002, at which time it heard arguments on the validity of the motion to reopen, as well as the need for a stay. Later on April 8, 2002, Justice Stevens of the Supreme Court of the United States stayed the execution pending a decision of the Supreme Court on the petition for writ of certiorari. That certiorari petition relates to attempts to reopen the federal habeas corpus case to raise issues of prosecutorial misconduct thought by the federal district judge to be procedurally barred. The Court has kept the case under advisement since April 8, 2002, with the expectation that the Supreme Court of the United States would act. Subsequently, on April 19, 2002, the petitioner filed a supplemental pleading which the Court has also considered. It now appears that the Supreme Court of the United States will hear the case limited to issues not related to the ineffective assistance of counsel claim. Petition for Writ of Certiorari granted in 01-9094, April 22, 2002, limited to two (2) enumerated issues. On April 22, 2002, the petitioner filed a motion requesting this Court to defer ruling; however, the Court believes that it can and should now decide the issues before it.
The petitioner has set forth six (6) claims which he asserts support the reopening of his post-conviction case. Those six (6) claims, as set forth in the motion, are:
I. The complete failure of counsel to present mitigating evidence warrants a new sentencing hearing since it violates Article I, §§ 9
and 16 of the Tennessee Constitution;
II. He was arguably denied his right to due process and a jury trial since his aggravating circumstances were not charged in the indictment and deserves a stay of execution pending the outcome of the U.S. Supreme Court in the decision Ring v. Arizona, U.S. No. 01-488, cert. granted, 534 U.S. ___, 122 S.Ct. 865 (2002) and the Tennessee Supreme Court's decision in State v. Dellinger, No. E1997-00196-SCT-R3-DD. The United States Supreme Court has granted stays of execution based upon the pendency of Ring in Florida v. Amos King (No. 01- 7804) and Florida v.Linroy Bottoson (No. 01-8099).
III. The prosecution withheld exculpatory evidence.
IV. The jury considered an unconstitutional "heinous, atrocious and cruel" aggravating factor.
V. The jury received an unconstitutional instruction on the meaning of reasonable doubt; and
VI. Lethal injection violates the prohibition against cruel and unusual punishment under the Eighth Amendment of the United States Constitution and Article I, § 16 of the Tennessee Constitution.
Before turning to the merits of this case, the Court will address the petitioner's challenge to the integrity of the criminal justice system in general and the state court system in particular. The premise of the petitioner's challenge is that the state courts are insensitive to insuring a fair proceeding for capital defendants. The facts are, though, that the undersigned Judge has previously set aside one (1) death penalty conviction and, in another case, made a ruling which was perhaps perceived so favorable to the defense that the state dropped its request for a re-trial of a set- aside death sentence. See State v. Terry,813 S.W.2d 420 (Tenn. 1991); State v. Teague, 897 S.W.2d 248 (Tenn. 1995). In neither case did this Judge avoid his responsibility to insure that the law was fairly applied to a defendant under the shadow of a death sentence.
Furthermore, beyond this particular Judge, both the Court of Criminal Appeals and the Supreme Court of Tennessee have acted, without hesitation, to insure that the rights of the defendants, in the face of capital punishment, were protected, whatever may be the perceived public sentiment to the contrary. There are numerous reported cases that involve the reversal of death sentences when defendants were represented by ineffective counsel. See e.g., Goad v. State, 938 S.W.2d 363 (Tenn. 1996); Brimmer v. State, 29 S.W.3d 497 (Tenn.Crim.App. 1998); Adkins v.State, 911 S.W.2d 334 (Tenn.Crim.App. 1994); Cooper v. State,847 S.W.2d 521 (Tenn.Crim.App. 1992).
The Court will now turn to the merits of the claims in this case.
 I.
The issue of ineffective assistance of counsel has been litigated and previously determined adverse to the petitioner's assertions. See Fletcherv. State, 951 S.W.2d 378 (Tenn. 1997) (motion to reopen properly denied when ground for relief "had been previously determined"). Furthermore, the Court must reject, in this context, the petitioner's argument that the state constitutional standards are greater than the federal rights. The Supreme Court of Tennessee has held that, in the context of ineffective assistance of counsel, the standards are the same. See Statev. Melson, 772 S.W.2d 417, 419 n. 2 (Tenn. 1989). Whether the claim of ineffective assistance is brought under the federal or the state constitution, the standards are the same and set out in Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). That standard was applied in this case. See State v. Taylor, 968 S.W.2d 900, 905
(Tenn.Crim.App. 1997).
The petitioner, citing Van Tran v. State, 66 S.W.3d 790 (Tenn. 2001), also argues that Article 1, § 16 somehow changes the standard of judging ineffective assistance of counsel. Van Tran held that Article 1, § 16, prohibiting cruel and unusual punishment, forbids execution of the mentally retarded. Id. at 812. There simply is no way that case can be expanded as authority for the proposition for which it is cited by petitioner. Furthermore, even recognizing Justice Ray Brock's dissent inState v. Dicks, 615 S.W.2d 126 (Tenn. 1981) and through such cases asState v. Howell, 868 S.W.2d 238, 258 (Tenn. 1993), the Supreme Court of Tennessee has rejected broad based challenges to the death penalty statute and, thereby, implicitly rejected any challenges that would impose a standard for ineffective assistance beyond that required byStrickland.
The above analysis, however, does not dispose entirely of this claim. While traditional rules of finality would prohibit further review of this ineffective assistance of counsel claim, petitioner argues that the recent decisions in Van Tran, 66 S.W.3d at 799 and Workman v. State,41 S.W.3d 100, 101-03 (Tenn. 2001) indicate a clear intent by a majority of the Supreme Court of Tennessee to not allow "procedural technicalities" to bar review of critical constitutional claims. In order to fully understand petitioner's argument, it is necessary to consider the history of this case subsequent to the filing of the post-conviction petition in this Court.
As previously mentioned, the petition for post-conviction relief was filed in 1991. At that time the Court appointed Richard Dinkins, a well-respected, local, civil rights attorney, to represent the petitioner. Subsequently, the Court appointed one of Mr. Dinkins' associates to assist him and later replaced the associate with a former Metropolitan Public Defender, William Schulman. The record makes clear that Mr. Dinkins was not enthusiastic about his appointment and over the next several years made excuses as to why he could not devote his full attention to the matter. Mr. Dinkins protestations were, in part, the reason why the Court appointed the former public defender to assist him. It appears that, as the date for the hearing drew closer, an attorney from the Capital Case Resource Center entered an appearance and seemed to take primary responsibility for the presentation of evidence at the post- conviction hearing. Petitioner's present counsel, therefore, argued that the lack of commitment by post-conviction counsel, until the entry of the lawyer from the Capital Case Resource Center some three (3) months before the hearing in state court, significantly limited the ability of the petitioner to present an effective case before this Court.[2]
Petitioner also contends that post-conviction counsel's abilities were dampened by the Court's failure to authorize sufficient funds to present an effective case. Petitioner contends that the record shows that the Court authorized him Two Thousand Dollars ($2,000.00) for investigatory services and Five Thousand Four Hundred and Fifty Dollars ($5,450.00) for psychiatric services. The Court believes the record more clearly shows it authorized Three Thousand Dollars ($3,000.00) for investigatory services, but, in either case, petitioner's present counsel indicates it was not enough.
After a three (3) day hearing, the Court, on the record before it, found that the petitioner had been ineffectively represented by his trial counsel, Mr. Lionel Barrett and Mr. Sumpter Camp. The Court, however, for reasons stated in its opinion, found no prejudice. It does bear repeating that, while there is a great deal of emphasis in this case on the affirmative evidence not heard by the jury, there is very little emphasis on the negative impact which would have come in with the additional evidence. That negative evidence included an indication of a long history of malicious and assaultive behavior, of which one incident involved a report of sexual assault on a family member, the petitioner's prior conviction of aggravated assault, and followed by his conviction for second degree murder in 1972.
After the decision in this Court in 1993 and its affirmance by the appellate court, the petitioner filed a petition for writ of habeas corpus in federal court. That petition was heard before the federal district judge who, the record shows, heard from more witnesses than were heard in this Court. (See Exhibit 4) These witnesses included, and perhaps most importantly, the petitioner's half-sister, Nancy Lancaster and his former fiancé, Sarah Roberts Walton. The additional testimony heard by the federal district judge is discussed at Abdur'Rahman v. Bell,999 F. Supp. 1073, 1093-1101 (M.D.Tenn. 1998) rev'd, 226 F.3d 696 (6th Cir. 2000). The federal district judge put special emphasis on the testimony of Nancy Lancaster and Sarah Roberts Walton. Abdur'Rahman,999 F. Supp. at 1097-98. There is no doubt that the lawyers that presented the habeas corpus case before the federal district judge presented more witnesses and that the federal district judge was of the opinion that the additional proof was sufficient to show that the petitioner was prejudiced by the failures of his trial counsel.The district judge was reversed in a decision with three (3) separate opinions. SeeAbdur'Rahman, 226 F.3d 696. The lead opinion by Judge Siler concluded that it was appropriate for the district judge to hear additional evidence but that even considering this additional evidence:
[P]etitioner did not suffer prejudice at the sentencing phase due to his trial counsel's deficient performance. While it is true that much of the supplemental evidence contains mitigating evidence that a sentencer might find to be compelling, the same evidence likewise has aspects that would be compelling evidence of aggravating circumstances. In particular, the supplemental evidence contained a description of Petitioner's motive for killing a fellow prison inmate and a history of violent character traits. Therefore, we agree with the post-conviction trial court and the Tennessee Court of Criminal Appeals that because the mitigating evidence that could have been introduced also contained harmful information, Petitioner did not suffer prejudice sufficient to create a reasonable probability that the sentencing jury would have concluded that the balance of aggravating and mitigating factors did not warrant death. Thus, the decision of the district court that Petitioner was prejudiced at the sentencing stage due to his counsel's deficient performance is reversed.
Id. at 708-09.
In a concurring opinion written by Judge Batchelder, she held that under federal habeas corpus laws the district judge should not have heard additional evidence. She then went on to state:
In Tennessee's post-conviction courts, petitioner Abdur'Rahman claimed that his trial counsel had rendered ineffective assistance by failing to investigate his mental health and criminal histories sufficiently to paint a sympathetic picture of his abusive childhood and resulting serious mental illness at sentencing. The state court conducted an evidentiary hearing, at which it considered the testimony of one Dr. Barry Nurcombe; Abdur'Rahman's school, military, and prison records; the transcript of a previous trial; records of the Middle Tennessee Mental Health Institute; records of social services departments; the affidavit of Mark Jones, Abdur'Rahman's brother; and a great deal of other evidence. At the conclusion of the hearing, the court held that Abdur'Rahman's trial counsel had been constitutionally deficient — reasonable attorneys would have investigated the accused's mental health and criminal histories. The court concluded, however, that counsel's faulty performance did not prejudice Abdur'Rahman. The evidence introduced at the hearing, the court noted, contained extensive documentation that Abdur'Rahman had had a past of profound violence, but no serious mental illness. Deciding that this information "looks like a mine field for any trial attorney to tiptoe through," the court denied post-conviction relief.
. . . .
[T]he evidence that Abdur'Rahman adduced at the federal evidentiary hearing is plainly insufficient to undermine confidence in the jury's sentence. See Strickland v. Washington, 466 U.S. 668, 694 (1984). As Judge Siler points out, the additional evidence presented to the habeas court merely supplemented the factual findings made by the post-conviction trial court. What the state court said in 1995 holds true today: "It is unrealistic to expect the jury to change the result because of testimony about the petitioner's troubled background and mental illness in the face of a prior murder conviction which is added to two additional aggravating circumstances including the heinousness of the killing." I therefore concur that the order granting the writ as to Abdur'Rahman's death sentence should be reversed.
Id. at 718-19.
This Court must conclude that the Sixth Circuit Court of Appeals determined that, even considering the additional evidence adduced in the federal district court, the petitioner is not entitled to a new sentencing hearing under a Strickland analysis. Petitioner has had his full review. The Sixth Circuit considered all the evidence at the habeas corpus hearing and concluded that he suffered no prejudice. While the Supreme Court of the United States has granted certiorari to review the Sixth Circuit decision, the review is limited to procedural issues unrelated to ineffective assistance of counsel and whether the conduct of trial counsel was prejudicial.
The Court would also note, as to the petitioner's observations regarding the deficiencies in the state post- conviction proceeding, that the record reflects that petitioner's then counsel was aware of petitioner's half-sister, Nancy Lancaster and should have been aware of his former fiancé, Sarah Roberts Walton. As the respondent points out and the record reflects, these witnesses and many others appeared voluntarily at the petitioner's commutation hearing held on the 28th day of March, 2002. The record does not support any finding that the petitioner was deprived of these witnesses as a result of a lack of funds or an inability to find them. However, whatever the reason might have been causing a less than full presentation in state court, petitioner got his full hearing in federal court and the Sixth Circuit has rejected his assertion as to ineffective assistance of counsel on the full record before the federal district court.
It is, therefore, the conclusion of the Court, for the reasons stated above, that the assertions regarding ineffective assistance of counsel are without merit and do not state a claim cognizable under T.C.A. § 40-30-217(a).
 II.
The petitioner next contends that the holding in Apprendi v. NewJersey, 530 U.S. 466, 120 S.Ct. 2348 (2000) requires that the alleged aggravating circumstance must be charged in the indictment. The petitioner has previously filed a motion to reopen based on Apprendi. That motion was denied by Order of this Court dated July 17, 2002. That Order was not appealed. The issue has, therefore, been previously determined.See T.C.A. § 40-30-206(6). Further-more, the petitioner's argument regarding Apprendi has been universally rejected. See, e.g.,Baker v.State, 790 A.2d 629 (Md.App. 2002); State v. Terry, 37 P.3d 157 (Or. 2001); Lucas v. State, 555 S.E.2d 440 (Ga. 2001).
 III.
The petitioner next asserts a claim that the prosecution withheld material and exculpatory evidence in violation of due process under Bradyv. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963). Petitioner asserts a violation of his Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution and his rights under Article I, §§ 8, 9, and 16 of the Tennessee Constitution. Petitioner contends that the evidence would show that he did not deserve a death sentence and was a mentally disturbed individual. Specifically, petitioner asserts that the prosecution withheld evidence concerning Alan Boyd. Petitioner maintains that Mr. Boyd was the driving force behind the murder and the prosecution withheld information that Mr. Boyd was engaged in illegal behavior around the time of the incident. Second, petitioner asserts that the prosecution withheld a taped statement from Susie Bynum regarding petitioner's mental illness, which proved that he did not deliberately kill the victim. Despite repeated requests, the prosecution never turned over this tape. Finally, petitioner asserts that the prosecution failed to turn over evidence surrounding the reasons as to why his co-defendant, Harold Devalle Miller, was not arrested for a significant period of time after the offense. Petitioner asserts that the reasons behind the failure to arrest Mr. Miller call into question petitioner's culpability and was exculpatory to his sentence.
The Court finds these assertions to be without merit. The Court first notes that petitioner's counsel failed to make any argument on this issue at the hearing. Obviously, petitioner's counsel places less emphasis on this issue. The Brady claims do not satisfy the statutory requirements necessary to reopen the post-conviction proceeding under T.C.A. § 40-30-217(a). Therefore, the Court concludes there is no authority to consider the claims. Furthermore, the Court is of the opinion that the purported exculpatory evidence is not material in that there is no reasonable probability that, had the evidence been disclosed to the petitioner, the result of the proceeding would have been different. SeeUnited States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985). The evidence at issue is extremely tangential to petitioner's claims and not newly discovered information. The allegations regarding Mr. Boyd have nothing to do with this incident. Petitioner provides no indication of what Ms. Bynum said in her taped statement which would prove there was no intent to kill. Finally, the Court cannot conceive of how the timing of Mr. Miller's arrest would affect the petitioner or his sentence.
Neither the claim related to the Bynum allegation nor the delay in Mr. Miller's arrest are supported by affidavit as required by T.C.A. § 40-30-217(b). Furthermore, as the response of the state points out, petitioner's counsel have long been aware that the Bynum tape cannot be found and no written record supports the conclusion that Bynum said anything about the petitioner's mental state other than what defense were already knew. As to the delay in Mr. Miller's arrest, there is nothing to suggest that the petitioner was prejudiced by this delay or the delay benefitted the state.
 IV.
The petitioner's allegation that the aggravating circumstance that the murder was "heinous, atrocious or cruel" is constitutionally vague is without merit. The petitioner's arguments have been continuously rejected in cases such as Terry v. State, 46 S.W.3d 147, 159-61 (Tenn. 2001) andState v. Middlebrooks, 995 S.W.2d 550, 556-57 (Tenn. 1999).
 V.
Petitioner's assertion regarding the reasonable doubt instruction is waived. T.C.A. § 40-30-206(g). Furthermore, the argument made by petitioner has been held to be without merit. See State v. Hall,976 S.W.2d 121, 158-59 (Tenn. 1998); State v. Bush, 942 S.W.2d 489,520-21 (Tenn. 1997).
 VI.
The petitioner alleges that lethal injection is cruel and unusual punishment under Article I, § 16 of the Tennessee Constitution and theEighth Amendment of the United States Constitution. Petitioner correctly points out that the Supreme Court of Tennessee has indicated that this issue is cognizable on a post-conviction petition. See State v. Suttles,30 S.W.3d 252, 263-64 (Tenn. 2000)[3]. In 1998 the General Assembly enacted legislation which afforded defendants sentenced to death the option of choosing lethal injection as a method of execution. More recently the General Assembly enacted legislation which adopted lethal injection as the default method of execution in Tennessee. See T.C.A. § 40-23-114.[4]
Furthermore, even if the Court misreads the dictates of the Supreme Court of Tennessee in Suttles, the Court is of the opinion that the issue is properly before it. This Court is one of general jurisdiction and this claim is a justiciable issue. A trial court is not bound by the title of a pleading but has the discretion to treat the pleading according to the relief sought. See Norton v. Everhart, 895 S.W.2d 317, 319 (Tenn. 1995).
The petitioner's claim all but recognizes the futility of requesting a per se finding of unconstitutionality as to lethal injections. Every court that has considered the issue has determined that lethal injection is not unconstitutional per se. See Suttles, 30 S.W.3d at 264 n. 3; LaGrand v.Stewart, 133 F.3d 1253, 1264-65 (9th Cir. 1998). The issue has come before the Supreme Court of Tennessee twice, and, in each instance, the Supreme Court of Tennessee has declined to rule on the issue until it was properly presented. See Suttles, 30 S.W.3d at 264; State v. Morris,24 S.W.3d 788, 797 n. 8 (Tenn. 2000).
Petitioner's contention is that the method adopted by the Tennessee Department of Correction is unconstitutional. The method adopted involves the injection of three (3) substances — Sodium Penathol which induces anesthesia; Palvulon a paralyzing medication; and Potassium Chloride, which stops the heart. Petitioner contends that the procedures and methods by which these substances are administered "include a significant risk of inflicting severe and unnecessary pain and suffering" upon the petitioner. Petitioner contends that the use of Sodium Penathol as a barbiturate is problematic and that if an inadequate dose of Sodium Penathol is administered, the petitioner may suffer excruciating physical pain, with no outside appearance of pain because the Palvulon would paralyze him.
When considering the constitutional standards under both the federal and state constitutions prohibiting cruel and unusual punishment, the Court does recognize that certainly some pain is going to be associated with any method of execution. The constitutional bar, however, is crossed when the method of execution results in torture or lingering death. Unnecessary pain, undue physical violence, or bodily mutilation and distortion, is prohibited. In Re Kemmler, 136 U.S. 436, 447, 10 S.Ct. 930
(1890). Whatever the form of execution, it must eliminate "[t]he unnecessary and wanton infliction of pain" Gregg v. Georgia, 428 U.S. 153,173, 96 S.Ct. 2909 (1976) (plurality opinion).
The Court, therefore, holds that the record before it is sufficiently unclear to allow the Court to dismiss this claim. The petitioner is entitled to an evidentiary hearing as to his allegations. After an evidentiary hearing, this issue will then be resolved by this Court and ultimately the Supreme Court of Tennessee will have an opportunity to make a definitive ruling on this issue.
Conclusion
For the reasons stated above, the Court finds that pursuant to T.C.A. § 40-30-217 the motion to reopen is without merit as to claims I-V, those claims are dismissed, and this is a final order as to claims I-V. The petitioner is entitled to an evidentiary hearing on claim VI and the Court will retain jurisdiction of that claim. The Court will set an evidentiary hearing if and when the petitioner again becomes eligible for the setting of a new execution date.
This the 25 day of April, 2002.
WALTER C. KURTZ, JUDGE
xc: John C. Zimmerman Assistant District Attorney General Washington Square, Suite 500 222 Second Avenue North Nashville, TN 37201-1649
Jennifer L. Smith Assistant Attorney General Office of the Attorney General 425 Fifth Avenue North P.O. Box 20207 Nashville, TN 37202-0207
Donald E. Dawson Post-Conviction Defender Office of the Post-Conviction Defender 530 Church Street, Suite 600 Nashville, TN 37243
Bradley A. MacLean Attorney at Law SunTrust Center 424 Church Street, Suite 1800 Nashville, TN 37219-2327
William P. Redick, Jr. Attorney at Law 810 Broadway, Suite 201 Nashville, TN 37203
[1] The dissenting justice in the recent Supreme Court decision in this case (Order of April 5, 2002) commented that this appellate decision was only three (3) pages long. He failed to mention that the decision of this Court was twenty-nine (29) pages long.
[2] The petitioner's argument borders on an assertion of ineffective assistance of counsel during the post-conviction proceeding. An allegation asserting ineffective assistance of counsel in prior post-conviction proceedings is not a cognizable legal claim. See House v.State, 911 S.W.2d 705, 711-13 (Tenn. 1995).
[3] Whether under the statute allowing a motion to reopen a post-conviction petition, T.C.A. § 40-30-217, or under the general post-conviction statutes, T.C.A. § 40-30-201 et. seq., the Court believes the issue is properly before it. The claim was not ripe until the legislature adopted the present lethal injection statute, effective March 30, 2000, and the petitioner faced an expected execution date. Under the authority of Van Tran, supra. and Workman, supra., the Court believes the statute of limitations would not be a bar to the claim.Suttles stated that its holding on the availability of post-conviction relief on the constitutionality of lethal injection was "based upon the particular circumstances of this case" 30 S.W.3d at 264 n. 4. The Court, however, finds little distinction between the circumstances in Suttles
and the circumstances here. It can also be argued that the comment inSuttles regarding post-conviction relief was dicta and not binding on this Court. The Supreme Court of Tennessee has clearly delivered the message that trial courts are not to ignore its dicta. See Holder v.Tennessee Judicial Selection Comm'n, 937 S.W.2d 877, 881-82 (Tenn. 1996).
[4] The Court is of the opinion that the petitioner does have standing to bring this claim when the default statute, T.C.A. § 40-23-114, mandates death by lethal injection unless the petitioner chooses electrocution. See Stewart v. LaGrand, 526 U.S. 115, 119 S.Ct. 1018
(1999). The Supreme Court of Tennessee has upheld execution by electrocution as constitutional. Suttles, 30 S.W.3d at 263-64.