**STATE of Tennessee, Plaintiff-Appellee,**

**v.**

**Michael MATSON, Defendant-Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Jan. 23, 1984.

Rehearing Denied March 12, 1984.

William R. Heck, Chattanooga, for defendant-appellant.

William M. Leech, Jr., Atty. Gen., Wayne E. Uhl, Asst. Atty. Gen., Nashville, for plaintiff-appellee.

## OPINION

HARBISON, Justice.

Appellant was convicted of murder in the first degree while in the commission of armed robbery. He was sentenced to death by electrocution. The verdict and judgment are amply supported by material evidence, and the sentence is in no way arbitrary or disproportionate. Accordingly the judgment of the trial court is affirmed.

There is little controversy concerning the material facts. Appellant, who was about twenty-five years of age, had been living with his sister and brother-in-law in Chattanooga for several months before the date of the homicide, January 15, 1982. On that date he had not worked, but had spent the afternoon and early evening hours visiting several taverns and restaurants, and he had consumed a considerable quantity of alcoholic beverages. At the trial he did not deny committing the homicide but contended that he was too intoxicated to remember many of the details or to have given a voluntary confession.

Shortly before 10 p.m. on January 15, 1982, appellant returned to his sister's home for the third time during the evening. He removed a pistol belonging to her husband. He went to a small self-service gasoline station and grocery store located a short distance from his sister's home. The attendant at that time, Barney McKee, was working alone in the store. Appellant demanded that Mr. McKee give him the money in the cash register. McKee did so, apparently without protest or resistance. Appellant then shot him one time across the counter. He walked around the counter and shot the victim four additional times, later stating that he did this in order to make sure that the victim was dead. He left, returned the pistol to his sister's home, and was arrested a short time later on the street and found to be carrying McKee's wallet. The money which he had taken from the store was later found in his room at his sister's home.

When appellant was arrested he was found to be carrying a billfold and other items identifying him as Michael Matson. He denied to the police, however, that this was his name. He contended that his name was Martin Miller, that he was from Atlanta, and that he had robbed a Michael Matson in Atlanta, thus accounting for the billfold on his person. During the course of his interrogation at the police station, however, his sister and her husband arrived there and he saw his sister from some distance. There was no conversation between them, but she did identify him to one of the detectives. Appellant then confessed the details of the homicide, after being fully advised of his constitutional rights and signing a waiver. Two detectives who were interrogating him stated that he did not appear to them to be intoxicated, was coherent, spoke freely and was not coerced in any way in giving his confession. Appellant testified that he was intoxicated, remembered little of the interrogation, and contended that he was forced or coerced by the detectives, giving his confession only after they seized him and had torn his shirt. This testimony was sharply

contradicted, however, by photographs taken of the appellant immediately upon his arrival at the police station; these showed that his shirt was already torn at that time, and the officers testified to that effect.

█ It is further argued on behalf of appellant that the police used subtle psychological pressure or coercion in obtaining appellant's confession because his sister appeared and stated to the officers that she was extremely upset and disappointed in his conduct. This was told to appellant, who had become emotional upon seeing his sister at a distance. He himself testified, however, that he did not recall seeing her, and she testified that she had no conversation whatever with him. For over an hour he had been denying his identity to the police, who had interrogated him sporadically. He had also denied his involvement in the homicide under investigation. When his sister arrived, however, obviously his correct identity was established. The police had already ascertained that an individual named Michael Matson had a prior record with the Chattanooga Police Department and had obtained a file photograph. Appellant denied, however, that he was that person or that the photograph was taken of him, until his sister appeared.

Appellant's conduct in concocting a false identity and adhering to it until his sister arrived is strong evidence that he was not so intoxicated as to be disoriented or out of possession of his faculties. Neither he nor his sister testified that her appearance had anything to do with his confession, and, while he did become emotional upon seeing her, he may well have realized that further falsification of his identity to the police was futile. In all events he gave a full confession after complete advice concerning his constitutional rights, and the record simply does not sustain his contention that his will was overborne either by physical or psychological pressure.

█ In the course of his confession appellant mentioned another robbery which he had committed a few days earlier in which he had also shot an attendant. Before the jury all reference to this previous robbery was excised from the confession. After appellant had completed giving his tape-recorded confession to the officers, however, they continued to talk with him. One of them asked him why he had shot the victim in the present case five times. He stated that he had done so because he had shot the earlier victim twice but later learned to his chagrin that the victim had not died. He stated that he wanted to be very sure this time that the victim was dead and would be unable to identify him.

This oral statement to the detectives was admitted by the trial judge for consideration by the jury upon the ground that it tended to show intent and premeditation. Appellant was charged with premeditated murder as well as felony-murder, and we agree with the trial judge that this evidence was admissible on the question of premeditation. It also tended to refute appellant's contention that he was so intoxicated as to be incapable of premeditation, and it contradicted his statement that he could not remember the circumstances surrounding the homicide. We find no merit to the issues raised by appellant as to the voluntariness of his confession, its admissibility, or the admissibility of the subsequent oral statement.

Neither appellant nor the State offered any additional evidence at the sentencing hearing after the jury had found appellant guilty of felony murder. Appellant's counsel undertook to argue to the jury, however, that appellant had no significant history of prior criminal activity, a mitigating circumstance under T.C.A. § 39–2–203(j)(1). Appellant had admitted a prior conviction of arson as well as prior criminal charges for damage to private property, shoplifting and public drunkenness. His counsel urged, however, that these did not constitute "significant" previous criminal activity.

█ In its closing argument the State made reference to the recent prior robbery in which appellant had shot an attendant but had not killed him. Appellant objected to this argument on the ground that he had

not been convicted of that offense, and it is his insistence that the words "prior criminal activity" should be construed to refer only to prior criminal convictions.

■ The fallacy in this argument is that the statutory reference is to a mitigating circumstance, not an aggravating one. The accused is entitled to show that he has not even been previously arrested, and he is not confined in his evidence to showing lack of prior convictions. On the other hand, when he relies upon this particular statutory mitigating circumstance, he inevitably becomes subject to rebuttal evidence offered by the prosecution showing prior criminal activity. Neither the prosecution nor the defense is limited under this statutory provision to proof of prior convictions. We find nothing either vague or unconstitutional about the statutory provision. Tennessee does not limit the range of mitigating circumstances, and those referred to in the statute are merely particularized examples of the type of evidence which may be offered by an accused who has been convicted of first-degree murder.

■ We find no merit to any of the issues raised by appellant, nor does our independent review of the record indicate any basis for reversal of the conviction or the sentence in this case. We have reviewed the record as required by T.C.A. § 39–2–205. The evidence fully supports the jury's finding of the statutory aggravating circumstance that the murder was committed while the defendant was engaged in committing armed robbery. T.C.A. § 39–2–203(i)(7). It further supports their finding that no mitigating circumstances were shown which were sufficiently substantial to outweigh this aggravating circumstance. There is nothing arbitrary about the sentence of death as imposed, nor is the sentence excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant. *See, e.g., State v. Dicks,* 615 S.W.2d 126 (Tenn.1981) and *Houston v. State,* 593 S.W.2d 267 (Tenn.1980), in both of which the victim of a robbery was callously killed by the accused for the purpose of preventing identification. In the present case there was no resistance offered by the victim, the shooting could not have been accidental, and the record amply sustains the contention of the prosecution that appellant executed the victim deliberately in order to eliminate him as a witness.

The judgment of the trial court is affirmed. The sentence will be carried out as provided by law on June 28, 1984, unless stayed or otherwise ordered by this Court or other proper authorities.

Justice Brock concurs in affirming the conviction in this case but dissents with respect to the imposition of the death penalty for reasons stated in his dissenting opinion in *State v. Dicks,* 615 S.W.2d 126, 132 (Tenn.1981).

FONES, C.J., and COOPER and DROWOTA, JJ., concur.

BROCK, J., partially dissents.