STATE of Tennessee, Appellee,

v.

Tommy L. KING, Appellant.

Supreme Court of Tennessee,
at Nashville.

Aug. 5, 1985.

George L. Lovell, Gary M. Howell, Columbia, for appellant.

Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, for appellee; W.J. Michael Cody, Atty. Gen. & Reporter, Nashville, of counsel.

## OPINION

HARBISON, Justice.

Appellant was convicted of murder in the first degree and sentenced to death by electrocution. After consideration of the briefs and argument of counsel and the entire record, we affirm the judgment.

On May 27, 1982, appellant shot William Mark Lockridge, proprietor of a tavern known as the Third Street Inn in Columbia,

Tennessee. Mr. Lockridge, who was forty-two years of age, died a week later at Vanderbilt Hospital. The single shot entered his body at the left side of the neck and followed a downward trajectory, damaging the spinal cord and several vertebrae. As far as the record reveals, Mr. Lockridge never regained consciousness after being shot.

Appellant, Tommy Lee King, was thirty-two years of age at the time of the trial. He had had five previous felony convictions. On several occasions he had been granted probation, but he continued to commit further offenses. He was on probation from a previous conviction at the time he shot Mr. Lockridge.

Appellant and a codefendant, Ronald Davis, lived in Chattanooga, but they had been in Columbia for a few days prior to the homicide. They had been traveling in a car belonging to the sister of Mr. Davis. It needed repairs, and they had taken it to a repair shop near the place of business of Mr. Lockridge. Lacking funds to pay for the repairs, they had attempted to sell to Mr. Lockridge and others some stolen dry goods. There is also testimony that they had attempted to sell a .357 magnum pistol on the day before the homicide.

At the trial, appellant insisted that he did not possess such a weapon, but that Mr. Lockridge did. There was conflicting testimony on the point, several witnesses stating that they had never known Mr. Lockridge to own or possess a pistol. After the homicide, appellant and Davis returned to Chattanooga, and a .357 magnum pistol was found secreted in the apartment where King was staying. Ballistics testimony established clearly that the fatal shot was fired from this weapon.

Witnesses at the scene of the homicide, which occurred between 10 and 11 p.m. on May 27, 1982, testified that King was in possession of the weapon at the time of the shooting and thereafter. He claimed that he took it from Lockridge during a struggle, but there is abundant testimony in the record to refute this contention. Most of the witnesses testified that Lockridge was not armed. Several of them testified that both appellant and Davis were armed when they came into the restaurant and appellant demanded to see the owner.

It was the contention of appellant that the shooting was accidental. He contended that earlier in the day the victim, Mr. Lockridge, had agreed to buy some blue jeans and other merchandise from but did not have correct change to pay for them. He stated that Lockridge told him to come back later, and that this was the purpose for the return of appellant and Davis to the tavern shortly before it was due to close. Appellant testified that Mr. Lockridge refused to pay for the merchandise, and that a struggle ensued in which Lockridge attempted to draw his pistol. Appellant contended that the pistol was fired accidentally during the course of this struggle. He and Davis fled, stealing Mr. Lockridge's automobile, which they took to Chattanooga. It was found the next day outside the apartment in which appellant was staying.

The great weight of the testimony is to the contrary. Numerous witnesses testified that appellant and Davis entered the tavern near closing time and that appellant demanded to see the owner. He fired a shot into the ceiling of the restaurant and required the owner and three other persons present to lie down on the floor, stating that he intended to rob them. He and Davis did proceed to rob some of these persons, as well as to rifle Mr. Lockridge's cash register and take his car keys. After all of the occupants were on the floor, another patron came in, having heard the first shot, and he, too, was ordered to lie down. He managed to escape into a restroom, where he and another witness remained until after the shooting was over. They heard at least one additional shot which, according to the State's testimony, was the shot which proved fatal to Mr. Lockridge.

Appellant and Davis ran from the tavern into the street, where Davis first got into an automobile belonging to one of the witnesses. It was very similar to the vehicle owned by Mr. Lockridge. The witness pro-

tested, and Davis then got into Lockridge's vehicle. He was followed by King, who forced the witness, Yolanda Williams, to lie on the street at gunpoint, while appellant and Davis made their escape.

■■■ The jury found that appellant had committed murder in the first degree during the perpetration of an armed robbery, and there is overwhelming evidence to support that conclusion. They found this also to be one of the aggravating circumstances at the sentencing hearing.[1] In addition they found that appellant had knowingly created a great risk of death to two or more persons other than the victim during the course of the homicide,[2] and that in addition he had been convicted previously of crimes involving violence or a threat of violence to the person.[3] Two of his prior convictions involved kidnapping and attempted robbery, both of which, by definition, involve personal violence or the threat thereof. Appellant attempted to explain the circumstances of the kidnapping and to deny that it was violent, but he admitted that he had pled guilty to that offense on a previous occasion. The evidence presented a question for determination by the jury as to whether he had previously been convicted of violent crimes, and they were not bound to credit his attempts to explain away the previous offenses to which he had pled guilty. Even if the proof as to this aggravating circumstance were marginal, the record overwhelmingly supports the conclusions of the jury as to the other two aggravating circumstances which they found.

■■■ Very little was offered by way of mitigating circumstances other than appellant's insistence that he was morally justified in his actions because Mr. Lockridge had refused to pay him for merchandise and his insistence that the shooting was accidental. Both of these were jury questions, and the jury was not bound to accept appellant's version of these factual issues.[4] Appellant testified at both the guilt and the sentencing phases of the trial, and his credibility was drawn into issue in numerous instances. In addition, at the sentencing phase, a character witness testified that appellant's reputation for truth and veracity was poor.

On appeal, appellant does not question the sufficiency of the evidence to support the jury verdict of guilt or deny that there was material evidence with respect to the three aggravating circumstances found. Seven issues have been presented for review.

■ In the first of these appellant insists that the trial judge erred in not permitting his counsel to introduce appellant's prior statement. This was offered during the cross-examination of a detective who took the statement. The statement was exculpatory in that appellant contended in it, as he did in his trial testimony, that the shooting was accidental. Appellant has cited very little authority for the introduction of his own self-serving statement given to the police. The State did not offer the statement in evidence or attempt to use it against appellant in any way. In our opinion the trial judge correctly excluded it. *See State v. Wiseman*, 643 S.W.2d 354, 366 (Tenn.Crim.App.1982), where the following was stated:

"Next the appellant contends that the trial judge erred by refusing to admit the appellant's statement. The appellant attempted to place before the jury, through a T.B.I. agent, a statement that the appellant gave to the Tennessee Bureau of Investigation. In the statement the appellant admitted his friendship with his co-defendants, but adamantly denied his guilt of embezzlement. The state objected to the admission of his statement on the basis that it was hearsay and self-

1. T.C.A. § 39–2–203(i)(7).

2. T.C.A. § 39–2–203(i)(3).

3. T.C.A. § 39–2–203(i)(2).

4. No merchandise such as that described by appellant and Davis was found in the tavern after Mr. Lockridge was shot.

serving. The trial judge sustained the state's objection.

"In *Moon v. State*, 146 Tenn. 319, 242 S.W. 39, 54 (1921), the Supreme Court considered this issue and held that the self-serving declarations of a criminal defendant are not admissible. In *Hall v. State*, 552 S.W.2d 417, 418 (Tenn.Cr.App. 1977) this Court, citing *Wharton's Criminal Evidence*, 13th Edition, § 303, explained the reasoning for this rule as follows:

'A declaration made by a defendant in his own favor, unless part of the res gestae or of a confession offered by the prosecution, is not admissible for the defense. A self-serving declaration is excluded because there is nothing to guarantee its testimonial trustworthiness. If such evidence were admissible, the door would be thrown open to obvious abuse: an accused could create evidence for himself by making statements in his favor for subsequent use at his trial to show his innocence.' "

Detective Walter Hall testified at the trial and described his general investigation of the homicide. On direct examination he testified that after appellant and Davis were apprehended in Chattanooga, he went to that city, where he advised them of their rights and of the charges against them. He made no attempt to indicate either that they remained silent or that they gave any statement to him. Only on cross-examination of this witness by appellant's counsel was it brought out that the detective had taken a statement from appellant. It was at that point in the trial, during the cross-examination of the detective, that counsel for appellant sought to read appellant's statement into the record.

■ We find no error on the part of the trial judge in excluding the statement, nor do we find that the State attempted to establish any impermissible inference concerning the silence of appellant as proscribed in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In his second issue appellant insists that the trial court also erred in excluding from evidence the statement given by his codefendant, Davis, to the investigating officers. Davis did not testify at the trial, but in his statement he did corroborate appellant's version of the facts, at least to some extent and at least with respect to appellant's claim that the shooting occurred during his struggle with Lockridge.

■ Of course, the State would have been prohibited from introducing any portion of the statement of Davis which might have incriminated appellant, since Davis did not testify. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Appellant insists, however, that on cross-examination of the detective, he was entitled to introduce the statement given by Davis. This proffered testimony was excluded by the trial judge as hearsay, and in our opinion this ruling was correct. The statement did not incriminate Davis and was not offered as a declaration against the penal interest of Davis. The only authority cited by appellant for the admissibility of this statement is *Canady v. State*, 3 Tenn.Cr.App. 337, 461 S.W.2d 53 (1970). We have carefully examined this case, and we find nothing therein to support the contention of appellant that such evidence would be admissible over the objection of the State. In that case the statement of one codefendant was apparently offered by the State against the maker of the statement and two codefendants. The Court found that there was no violation of the right of confrontation of any of the defendants under the circumstances of that case. The holding does not stand for the proposition that a hearsay declaration of a codefendant is admissible for the offering defendant when the State timely objects. In the instant case the statement of Davis was offered for the truth of the matter asserted and for no other purpose. Such an exculpatory statement bears no inherent indicia of trustworthiness and obviously the State would be without power to cross-examine the declarant, a codefendant, unless the latter should voluntarily take the stand. We find no merit to this issue.

Counsel for appellant assigns as error the action of the trial court in limiting his cross-examination of one of the State's witnesses, Carolyn Gunn. This witness testified that she had observed Mr. Lockridge in possession of a large pistol on several occasions prior to the incident in question. Her testimony, in this respect, was favorable to appellant. Nevertheless counsel for appellant sought to cross-examine her about her alleged intimate relationship with Mr. Lockridge. Appellant sought to show that Ms. Gunn had for over a year been engaged in an illicit relationship with Mr. Lockridge, a married man. The trial judge found this testimony irrelevant to any issue in the case, and we are of the opinion that his ruling was correct. Counsel for appellant argues that the showing of this relationship would have strengthened the credibility of Ms. Gunn by demonstrating her opportunities for observing Mr. Lockridge with the weapon. Her testimony in this respect, however, was fully developed, in that she said that she and Mr. Lockridge were close friends and that she had observed him on several occasions in the possession of the weapon. In our opinion the exclusion of the proffered testimony could not have prejudiced appellant nor could it have reasonably been calculated to enhance the credibility of the witness.

In the fourth issue presented, appellant insists that a significant change was made in the State's criminal law when the General Assembly changed the word "killing" to "murder" in re-enacting the felony-murder statutes in 1977 Tenn.Pub. Acts, ch. 51. This issue has been examined in a number of cases and found by the Court to be without merit. The statute, now codified as T.C.A. § 39-2-202(a), defines murder in the first degree as premeditated, willful, deliberate and malicious homicide. However it also defines murder in the first degree as including any murder committed in the perpetration of certain specified felonies, including robbery. Murder in the first degree is sufficiently shown by proof of a killing committed during one of these specified felonies. *See State v. Johnson,* 661 S.W.2d 854, 860–861 (Tenn.

1983); *Tosh v. State,* 527 S.W.2d 146, 148 (Tenn.Crim.App.1975). We do not consider that the change in statutory language occurring in 1977 had the effect of abolishing the felony-murder rule, nor does felony-murder require proof of malice. Were that required, however, it might have been sufficiently shown in this case by statements attributed to appellant that he intended to kill the victim. There was also evidence that he threatened to kill the other persons in the tavern and was restrained from doing so by his codefendant.

In his fifth issue, appellant contends that the Assistant District Attorney erred in his argument to the jury at the sentencing phase that appellant had committed armed robbery. Of course, the jury had just convicted appellant of committing a murder during the course of an armed robbery, and the evidence which they had already heard clearly established that he had committed that offense. No objection was made to the argument, and we find no reversible error in connection therewith.

In the sixth issue, appellant attacks the constitutionality of the Tennessee statutes authorizing the death penalty in general. He also contends that it is improper to use the "underlying felony" which made the homicide felony-murder as one of the aggravating circumstances justifying the death penalty. This and similar arguments have been rejected in numerous cases. *See State v. Sheffield,* 676 S.W.2d 542 (Tenn.1984); *State v. Pritchett,* 621 S.W.2d 127 (Tenn.1981).

In his final issue appellant insists that the members of the jury were not properly sequestered and that the State failed to show a lack of prejudice under the principles outlined in *Gonzales v. State,* 593 S.W.2d 288 (Tenn.1980).

The trial judge held an extensive hearing in passing upon the motions for new trial filed by both defendants in this case. All of the members of the trial jury were subpoenaed and were examined by the court and by the District Attorney.

Counsel for appellant asked no questions whatever at this hearing. He contends that he was limited in the scope of his questioning, but the only limitation which we have found in the record is refusal of the trial judge to permit counsel to interrogate the jurors about other matters than the sequestration issue. We find no other limitation imposed by the trial judge, and, contrary to the insistence of counsel for appellant, we do not find that the trial judge prevented them from examining the jurors about events occurring at any time during the trial as distinguished from those which occurred on the last day of the trial.

■ The guilt phase of the trial ended on a Friday night, and the jury members were returned to their motel. The sentencing hearing and conclusion of the trial were expected to occur and in fact did occur on Saturday morning. The members of the jury were permitted to drive their personal automobiles from the motel back to the courthouse and to park nearby. Some of them came alone, and others were accompanied by fellow jurors. Each juror testified positively under extensive questioning by the court and by the Assistant District Attorney General that there was no interference, no outside contact, and no improper suggestion made to any of them. They were questioned by the trial judge as to whether any improper contact or influence had been exerted at any time during the trial, as well as on that Saturday morning, and in each instance the answers were negative. The record does not sustain the insistence of appellant.

■ We have examined this record and the briefs and argument of counsel in light of the issues presented in the briefs and also with the provisions of T.C.A. § 39–2–205(c) before us. It is part of the statutory duty of this Court to review a death sentence and to determine whether it was imposed in any arbitrary fashion. The Court is also required to determine whether the evidence supports the jury verdict with respect to aggravating circumstances and the absence of mitigating circumstances sufficient to outweigh them. The Court is also required to determine whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases.

■ Like the trial judge, we are of the opinion that the death penalty was justified in this case, and that its imposition was neither arbitrary nor disproportionate. In numerous other cases the death penalty has been approved where the homicide occurred during the perpetration of an armed robbery. It has also been upheld in other types of felony-murder. *See e.g., State v. McKay,* 680 S.W.2d 447 (Tenn.1984); *State v. Workman,* 667 S.W.2d 44 (Tenn.1984); *State v. Matson,* 666 S.W.2d 41 (Tenn. 1984); *State v. Harries,* 657 S.W.2d 414 (Tenn.1983); *State v. Johnson,* 632 S.W.2d 542 (Tenn.1982); *State v. Coleman,* 619 S.W.2d 112 (Tenn.1981); *Houston v. State,* 593 S.W.2d 267 (Tenn.1980).

The judgment of conviction and the sentence are affirmed. Unless stayed or otherwise ordered by proper authority, the sentence will be carried out as provided by law on October 25, 1985. Costs are taxed to appellant.

COOPER, C.J., and FONES and DROWOTA, JJ., concur.

BROCK, J., files dissent.

BROCK, Justice, dissenting.

I concur in the opinion of the Court in all respects except the constitutionality of the death penalty. With respect to the constitutionality of the death penalty, I adhere to the views expressed in my dissenting opinion in *State v. Dicks,* Tenn., 615 S.W.2d 126 (1981).