IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

June 7, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

TOMMY L. KING,

        Appellant,

Vs.

STATE OF TENNESSEE,

        Appellee.

)
)
)
)
)
)
)
)
)
)
)

Maury Criminal

No. 01-S-01-9707-CC-00146

### CONCURRING/DISSENTING OPINION

I agree with the majority that the jury's reliance on the felony murder aggravating circumstance in this case violated article I, § 16 of the Tennessee Constitution and that a harmless error analysis must be applied under our decision in State v. Howell, 868 S.W.2d 238 (Tenn. 1993). I disagree, however, with both the majority's application of the Howell analysis and its conclusion.

In State v. Howell, this Court said that a constitutional harmless error analysis as applied to a capital sentencing proceeding requires the appellate court "to completely examine the record for the presence of factors which potentially influence[d] the sentence ultimately imposed," including the sum, strength, qualitative nature, substance and persuasiveness of any remaining aggravating circumstances. Id. at 261-62. In my view, the majority fails to properly apply this thorough analysis. Moreover, resentencing is necessary because the State has failed to prove beyond a reasonable doubt that the sentence would have been the same had the jury given no consideration to the unconstitutional aggravating circumstance. I therefore dissent.

## CONSTITUTIONAL HARMLESS ERROR ANALYSIS

To understand Howell's rationale and underpinnings, it is helpful to review the history of constitutional harmless error analysis in the United States Supreme Court. In Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), the Supreme Court declined to adopt a rule requiring reversal for all constitutional errors which occur in a trial. The Court observed that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless . . . ." Id. at 22, 87 S. Ct. at 827.

The Court recognized that "harmless-error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence, or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one." Id. The Court therefore held that before a constitutional error could be deemed harmless, the beneficiary of the error, i.e., the prosecution, must prove "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. at 24, 87 S. Ct. at 828 (citing Fahy v. Connecticut, 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963)).

The Supreme Court first applied Chapman to a capital sentencing proceeding in Satterwhite v. Texas, 486 U.S. 249, 108 S. Ct. 1792, 100 L. Ed. 2d 284 (1988) (holding that the admission of expert testimony about the defendant's risk for future dangerousness violated Sixth Amendment). In holding that the error was not harmless under Chapman, the Court emphasized that the question is "not whether the legally admitted evidence was sufficient to support the death sentence . . . but rather, whether the State has proved 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Id. at 258-59, 108 S. Ct. at 1798 (quoting Chapman, 386 U.S at 24, 87 S. Ct. at 828).

Two years later in another capital sentencing case, Clemons v. Mississippi, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990), the United States Supreme Court remanded to the Mississippi Supreme Court, holding that when a capital sentencing jury in a weighing state has relied in part on an unconstitutional aggravating circumstance, an appellate court may either reweigh the remaining aggravating circumstances, if that is otherwise permissible under state law, or apply the Chapman harmless error analysis. In performing either analysis at the appellate level, however, the Court stressed that the defendant must be afforded "an individualized and reliable sentencing determination based on the defendant's circumstances, his background, and the crime" as required by the Eighth Amendment to the United States Constitution. Id. at 749, 110 S. Ct. at 1449.

In Stringer v. Black, 503 U.S. 222, 112 S. Ct. 1130, 117 L. Ed. 2d 367 (1992), the Supreme Court again stressed the need for "close appellate scrutiny of the import and effect of invalid aggravating factors to implement the well-established Eighth Amendment requirement of individualized sentencing determinations in death penalty cases." Id. at 230, 112 S. Ct. 1136 (emphasis added). Moreover, with regard to states such as Tennessee which employ a weighing process in the capital sentencing determination, the Court observed:

> [W]hen the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale. When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence. This clear principle emerges not from any single case . . . but from our long line of authority setting forth the dual constitutional criteria of precise and individualized sentencing.

Id. at 232, 112 S. Ct. at 1137 (emphasis added).

Finally, in Sochor v. Florida, 504 U.S. 527, 112 S. Ct. 2114, 119 L. Ed. 2d 326 (1992), a majority of the Supreme Court vacated a death sentence due to the Florida Supreme Court's failure to conduct a sufficient harmless error analysis under Chapman.

In particular, the Court observed that the Florida court did not "explain or even 'declare'" that the trial court's consideration of an invalid aggravating circumstance "'was harmless beyond a reasonable doubt'" in that it "'did not contribute to the [sentence] obtained.'" Id. at 540, 112 S. Ct. at 2123 (quoting Chapman, 386 U.S. at 24, 87 S. Ct. at 828). In a separate concurring opinion, Justice O'Connor summarized the principles in this area:

> In Chapman v. California, . . . we held that before a federal constitutional error can be held harmless, the reviewing court must find "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." This is justifiably a high standard, and while it can be met without uttering the magic words "harmless error," the reverse is not true. An appellate court's bald assertion that an error of constitutional dimensions was "harmless" cannot substitute for a principled explanation of how the court reached that conclusion. In Clemons v. Mississippi,. . . for example, we did not hesitate to remand a case for "a detailed explanation based on the record" when the lower court failed to undertake an explicit analysis supporting its "cryptic," one-sentence conclusion of harmless error.

Id. at 541, 112 S. Ct. at 2123 (O'Connor, J., concurring) (emphasis added) (citations omitted).

## HOWELL ANALYSIS

The principles evident in these Supreme Court cases -- that a constitutional error must be harmless beyond a reasonable doubt and that appellate review must preserve the constitutional requirement of individualized sentencing -- were of primary concern in our opinion in State v. Howell. We therefore held that when a jury has returned a death sentence based partially on the invalid felony murder aggravating circumstance, the verdict may be upheld only if a reviewing court concludes beyond a reasonable doubt that the sentence would have been the same had the jury given no weight to the invalid factor. See id. at 260; see also Stringer, 503 U.S. at 230-31, 112 S. Ct. at 1136-37.

In order to guarantee the precision that individualized sentencing considerations demand in capital cases and to provide a principled explanation for our review in each case, we established the following framework for appellate review:

> [I]t is important, when conducting harmless error review, to completely examine the record for the presence of factors which potentially influence

> the sentence ultimately imposed. These include, but are not limited to, the number and strength of remaining valid aggravating circumstances, the prosecutor's argument at sentencing, the evidence admitted to establish the invalid aggravator, and the nature, quality and strength of mitigating evidence.

Id. at 260-61 (emphasis added).

As discussed above, the first factor in Howell requires consideration of any valid aggravating circumstances found by the jury. We stressed that "even more crucial than the sum of the remaining aggravating circumstances is the qualitative nature of each circumstance, its substance and persuasiveness, as well as the quantum of proof supporting it." Id. at 261. Accordingly, Howell expressly requires in-depth and critical analysis of all remaining aggravating circumstances.

The proper analysis is set out in Howell and later cases. In Howell, we found that the Middlebrooks error was harmless beyond a reasonable doubt in part because evidence supporting the remaining aggravating circumstance of prior violent felony convictions was "undisputed and overwhelming." Id. at 262. Although we observed that this aggravating circumstance is more "qualitatively persuasive and objectively reliable" than other aggravating circumstances, id. at 261, we still analyzed the substance and persuasiveness of the evidence that supported the (i)(2) aggravating circumstance as it applied to defendant Howell. We said:

> In addition to the cold-blooded execution-style murder . . . in Memphis, Tennessee, the defendant committed another similar cold-blooded execution-style murder in Oklahoma within twenty-four hours . . . . Less than thirty days later, he committed an armed robbery in Florida and later engaged in a shootout with police officers before his capture, for which he was convicted of attempted murder. A few years earlier, he had been convicted in Wyoming for armed robbery.

Id. at 262.

Similarly, in State v. Nichols, 877 S.W.2d 722 (Tenn. 1994), the Middlebrooks error was found to be harmless beyond a reasonable doubt in part because the valid remaining aggravating circumstance, prior violent felonies, was supported by five prior

convictions for aggravated rape. In performing the harmless error analysis as required by Howell, we reviewed each of the five prior convictions in detail and considered the substance and persuasiveness of the evidence:

> the defendant had committed five similar aggravated rapes within 90 days of [the victim's] murder, and in three instances was armed with weapons including a cord, a pistol, and a knife. The modus operandi of the convictions was similar to the felony resulting in [the victim's] murder. The defendant, when "energized," went out night after night, roaming the city, selecting vulnerable victims, eventually breaking into their homes and violently committing rape. The evidence supporting the remaining valid aggravating circumstance is undisputed and overwhelming."

Id. at 738 (emphasis added); see also Boyd v. State, 959 S.W.2d 557 (Tenn. 1998) (finding Middlebrooks error harmless beyond a reasonable doubt in part due to seriousness of the second degree murder used to establish the prior violent felony aggravating circumstance).

Likewise, the substance and persuasiveness of the remaining valid aggravating circumstances was scrutinized in cases where the Middlebrooks error required remand for a resentencing. In Hartman v. State, 896 S.W.2d 94 (Tenn. 1995), this Court stressed:

> In Howell, we noted that a critical factor in our harmless-error analysis was the qualitative nature of each aggravating circumstance that remained after the invalid aggravator was removed from the sentencing equation. This Court stated an intention to look to the substance of the remaining circumstances and their persuasiveness, as well as to the quantum of proof supporting them. The objective reliability of a remaining aggravating circumstance is of particular importance in this evaluation.

Id. at 103 (emphasis added).

In State v. Walker, 910 S.W.2d 381 (Tenn. 1995), this Court conducted the Howell harmless error analysis and observed that the defendant's prior violent felony conviction for voluntary manslaughter was "not nearly as positive" as the evidence supporting the aggravating circumstance in Howell. Moreover, we indicated that the

<u>Howell</u> analysis requires more than merely determining whether the evidence was sufficient to support the remaining aggravating circumstance:

> [Walker] was indicted for first degree murder and found guilty of voluntary manslaughter. <u>While this is, as instructed by the trial judge, conviction of a violent felony</u> we have no way of knowing and cannot speculate whether the jury would have imposed the death penalty with one of the two aggravating circumstances withdrawn from their consideration and with the necessity of weighing the one remaining aggravating circumstance against the mitigating circumstances.

<u>Walker</u>, 910 S.W.2d at 398 (emphasis added).

In contrast, the majority in this case declines to "reweigh" the evidence of aggravating circumstances, stating only that it has "considered" the record and finds the valid aggravating circumstances "objectively reliable" and "amply supported by the proof." The majority does not discuss the strength, qualitative nature, substance, persuasiveness, or quantum of the proof supporting the valid aggravating circumstances despite the express requirement in <u>Howell</u>. Thus, the majority fails to properly apply <u>Howell</u> and also fails to preserve the requirement of individualized sentencing.[1]

### Remaining Aggravating Circumstances

### Prior Violent Felonies

We now apply the <u>Howell</u> harmless error analysis to the valid aggravating circumstances which were considered by the jury along with the invalid felony murder aggravating circumstance. To establish the first aggravating circumstance, that the defendant had a prior conviction for a felony that involved violence or the threat of violence, <u>see</u> Tenn. Code Ann. § 39-2-203(i)(2) (1982) (now codified at Tenn. Code

---

[1] Moreover, the majority appears to consider only whether the evidence was legally <u>sufficient</u> to establish an aggravating circumstance and not the strength, substance, and persuasiveness of the proof establishing that circumstance.

-7-

Ann. § 39-13-204(i)(2) (1997 & Supp. 1998)), the State relied upon the defendant's prior convictions for kidnapping and attempt to commit a felony, to wit, robbery.[2]

In analyzing the strength, substance and persuasiveness of this aggravating circumstance as required by Howell, we observe that it was described as "marginal" by this Court on direct appeal. State v. King, 694 S.W.2d 941, 944 (Tenn. 1985). The fact that King received only a suspended sentence and probation for the kidnapping of his wife and nine months imprisonment for the attempted robbery necessarily is relevant to the strength, seriousness and persuasiveness of those crimes. Moreover, the fact that the crimes did not involve actual harm to a victim is also relevant.

As pointed out in the concurring opinion by Judge Wade in the Court of Criminal Appeals and by way of illustration,[3] the strength, substance, and persuasiveness of King's prior convictions are weaker than in any of our prior cases in which the error has been deemed harmless. In Howell, the defendant had prior convictions for murder and armed robbery. 868 S.W.2d at 262. In Boyd, the defendant had a prior conviction for second degree murder. 959 S.W.2d at 561. In Nichols, the defendant had multiple convictions for aggravated rape. 877 S.W.2d at 738. In State v. Smith, 893 S.W.2d 908, 926 (Tenn. 1994), the defendant had prior convictions for robbery, assault with intent to murder, and aggravated rape. In State v. Cazes, 875 S.W.2d 253, 270 (Tenn. 1994), the defendant had prior convictions for assault with intent to murder and aggravated rape. In contrast, where this factor was supported only by a conviction for voluntary manslaughter, we concluded that resentencing was necessary. Walker, 910 S.W.2d at 398.

---

[2] The version of (i)(2) in effect at the time of this case requires a finding that "[t]he defendant was previously convicted of one or more felonies . . . which involve the use or threat of violence to the person." Tenn. Code Ann. § 39-2-203 (1982). In contrast, the present form of (i)(2) requires a finding that "[t]he defendant was previously convicted of one (1) or more felonies . . . whose statutory elements involve the use of violence to the person." Tenn. Code Ann. § 39-13-204(i)(2)(1997 & Supp. 1998).

[3] Although I agree with the majority assertion that Howell does not require a comparative review of cases, I would also observe that Howell does not preclude such a comparison to other cases for the purpose of illustration in undertaking a thorough review. Indeed, examining our precedent for the purpose of measuring the effect of an error in a case being reviewed is a basic component of appellate review.

Accordingly, in applying Howell, I would conclude that King's prior convictions marginally established this aggravating circumstance. The prior convictions, however, lacked the strength, substance and persuasiveness of the egregious convictions supporting this factor in other cases. In my view, all of these factors should be taken into consideration in conducting the harmless error analysis under Howell.

## Remaining Aggravating Circumstances

## Great Risk of Death

We now apply the Howell harmless error analysis to the second remaining valid aggravating circumstance found by the jury. It was that the defendant "knowingly created a great risk of death to two (2) or more persons, other than the victim murdered, during his act of murder." Tenn. Code Ann. § 39-2-203(i)(3) (1982) (now codified at Tenn. Code Ann. § 39-13-204(i)(3) (1997 & Supp. 1998)).

This Court has previously held that this aggravating circumstance "contemplates either multiple murders or threats to several persons at or shortly prior to or shortly after an act of murder upon which the prosecution is based." State v. Cone, 665 S.W.2d 87, 95 (Tenn.), cert. denied, 467 U.S. 1210, 104 S. Ct. 2400, 81 L. Ed. 2d 357 (1984). We have most commonly upheld its application in cases where the defendant fires multiple gunshots in the course of a robbery or other incident at which several persons other than the murder victim are present. E.g., State v. McKay, 680 S.W.2d 447 (Tenn. 1984), cert. denied, 470 U.S. 1034, 105 S. Ct. 1412, 84 L. Ed. 2d 795 (1985) (defendants killed two victims during robbery and shot at and threatened two other persons inside store); State v. Workman, 667 S.W.2d 44 (Tenn.), cert. denied, 469 U.S. 873, 105 S. Ct. 226, 83 L. Ed. 2d 155 (1984) (defendant engaged in shoot-out with police, killing one officer, wounding a second, and missing a third); State v. Johnson, 632 S.W.2d 542 (Tenn.), cert. denied, 459 U.S. 882, 103 S. Ct. 183, 74 L. Ed. 2d 148 (1982) (three people shot and injured in store and two people shot and killed in the parking lot as defendant fled). On the other hand, this Court has held that this factor was not applicable where the defendant shot and threatened three persons while

fleeing from a robbery but did not kill the two victims until the following day. Cone, 665 S.W.2d at 95.

Courts in other states have analyzed similar aggravating factors by considering a multitude of circumstances: the manner of the killing, the type of weapon used by the defendant, the number of gunshots fired, the size of the scene in which the killing occurred, and the proximity of other individuals. See, e.g., State v. Rose, 398 S.E.2d 314 (N.C. 1990); Commonwealth v. Moser, 549 A.2d 76 (Pa. 1988).

Other courts have restricted the application of this aggravating factor, holding that "great risk" of death means "highly probable" and not merely possible. See, e.g., State v. Smith, 707 P.2d 289 (Ariz. 1985); Kampff v. State, 371 So.2d 1007 (Fla. 1979).

I agree with the majority that King's actions were legally sufficient to support this aggravating factor. I disagree, however, with the majority's view that Howell requires only a determination of whether the factor is supported by "objectively reliable" proof. Instead, in reviewing the strength, substance and persuasiveness of the aggravator, I note that this case substantially differs from the multiple gunshots and random shoot-outs that marked such cases as Johnson, Workman, and McKay. Moreover, although several individuals were present, there was no random exchange of gunfire and only the victim was shot at and killed. I believe, therefore, that all of these circumstances must be taken into consideration in applying the constitutional harmless error analysis.

### Prosecutor's Argument at Sentencing

We next turn to the third Howell factor in the harmless error analysis -- whether and the extent to which the prosecution relied on the invalid felony murder factor in arguing for the death penalty in the sentencing phase of the trial. The State's argument is replete with references to the felony murder factor, as well as to the fact that the killing occurred during a robbery. A review of the prosecutor's opening argument reveals the following statements:

[W]hen you carefully analyze as you have done, and find that on May 27th, 1982, without justification of any sort, without claim of any right, this man willfully, deliberately took the life another with malice with a deadly weapon and took that in the course of committing another felony, to wit: Armed robbery.

. . .

The day is gone when we can just pick out a county and go there and pick out a man and pick out a business, rob and kill, and then with impunity seek to escape the accountability of our deeds.

. . .

And the murder was committed while the Defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing , or attempting to commit any first degree murder, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing, or discharging of a destructive device or bomb.  He committed this murder in the course of an armed robbery.

. . .

Hold this man accountable, stop his reign of criminal activity, put him under the kind of sentence that will forbid him to once again roam the streets seeking criminal activity, that will forbid him from once again choosing to come on a tour of Maury County to kill and to murder.

The following additional references to the felony murder aggravating factor appear in

the prosecution's final closing remarks:

[The defendant] comes to Maury County for no good reason other than he says he has some stolen goods in his car that he wants to sell, and goes into a place of business in Maury County to a man that he says he doesn't even know, and with the purpose, with his big pistol, with the purpose to rob and the, the pre-conceived notion that he will kill if he has to, and rob and kill the decent citizens of this community.

. . .

We have listed for your consideration no less than three mitigating [sic] circumstances.  One of which you have already determined, and that is that this murder was committed during the course of an armed robbery.

. . .

That has [been] determined in order to find that this man was guilty of felony murder, so that has been found by you already beyond a reasonable doubt.

-11-

. . .

> Violence, crimes of violence, risk of death to two or more persons, and of course, the underlying felony in this felony murder charge of which he now stands convicted which you have already found beyond a reasonable doubt.

. . .

> When a man takes a pistol, whether he takes a large pistol such as this, or a little bitty pistol, when he takes an instrument of death and goes into another person's business with the preconceived purpose of using that instrument of death for whatever, or in whatever manner is necessary in order to steal and rob from the people there, then I cannot see any mitigating circumstances when he goes in there and kills a man.

It is evident from the foregoing that the State's reliance on the invalid felony murder aggravating factor was substantial and strongly emphasized in seeking the death penalty. Moreover, the jury was told on several occasions that, by virtue of its guilty verdict, it had already found this circumstance to have been proven. Accordingly, I disagree with the majority's conclusion that taken as a whole, the State's argument did not emphasize the felony murder aggravating circumstance.

**Mitigating Evidence**

The fourth enumerated factor in Howell requires the reviewing court to look at the nature, quality, and strength of mitigating evidence that was before the jury. Mitigating evidence may include any aspect of the defendant's background, record, character, and any circumstances about the offense that may mitigate against the death penalty. State v. Teague, 897 S.W.2d 248, 255 (Tenn. 1995); see also Lockett v. Ohio, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964, 57 L. Ed. 2d 973 (1978).

The defendant's mitigation evidence consisted of only his own testimony and was not extensive or overwhelming. Nonetheless, King testified that he was 32 years old at the time of sentencing; that he had two brothers and two sisters, and his parents were deceased. He had been married and divorced, and had one son who was 3 years old at the time of the sentencing hearing. King had worked selling insurance and as a

cook for a restaurant in Chattanooga.  After having surgery on his stomach, he worked

part-time for his brother as a brick-layer.  King testified that he had never intentionally

harmed anyone.[4]

## CONCLUSION

_____The majority has failed to properly apply the constitutional harmless error

analysis as required by Howell by failing to consider the strength, qualitative nature,

substance, and persuasiveness of the remaining valid aggravating circumstances and,

as a result of its failure, has reached a conclusion with which I cannot agree.


The constitutional error in the sentencing phase of a capital case may be

deemed harmless only if the reviewing court concludes "beyond a reasonable doubt

that the sentence would have been the same had the jury given no weight to the invalid

felony murder aggravating factor."  Howell, 868 S.W.2d at 262 (emphasis added).  As

Justice O'Connor emphasized in Sochor v. Florida, "this is justifiably a high standard."

504 U.S. at 541, 112 S. Ct. at 2123 (O'Connor, J., concurring).


Having thoroughly reviewed the relevant factors which potentially influenced the

sentence reached by the jury, I cannot conclude beyond a reasonable doubt that the

sentence would have been the same had the jury given no weight to the invalid

aggravating circumstance.  I would, therefore, remand for resentencing free from the

constitutional defect that was present in this case.  I am authorized to state that Justice

Birch concurs in this opinion.

_____
RILEY ANDERSON, CHIEF JUSTICE

---

[4] Cf. Hartman, 896 S.W.2d at 103 (Middlebrooks error required resentencing despite minimal evidence of mitigating factors).