IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 2001 Session

## STATE OF TENNESSEE v. AMMON B. ANDERSON

**Appeal from the Circuit Court for Cheatham County**
**No. 13489    Allen Wallace, Judge**

---

**No. M2000-01183-CCA-R3-CD - Filed April 12, 2001**

---

The defendant was indicted for aggravated sexual battery for engaging in sexual contact with a ten-year-old girl with Down's Syndrome. He filed a motion to dismiss the indictment, based on the loss of the tape recording of his interview with a Department of Children's Services caseworker and a police officer, and a motion to suppress his one paragraph statement of admission, consisting of the officer's summary of the interview. Following the trial court's denial of the motions, the defendant entered a plea of *nolo contendere* to attempt to commit aggravated sexual battery, reserving as a certified question of law, pursuant to Rule 37(b)(2)(i) of the Tennessee Rules of Criminal Procedure, whether the trial court erred in denying his motion to dismiss based on the loss of the tape recording of the interview. Arguing that the statement of admission is subject to misinterpretation when taken out of the context of the entire interview, the defendant contends that his right to a fair trial was compromised by the loss or destruction of the tape recording. After a thorough review of the record and of applicable law, we conclude that the loss of the tape recording did not unfairly prejudice the defendant's case. Accordingly, we affirm the defendant's conviction of attempt to commit aggravated sexual battery.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

John B. Nisbet, III, Cookeville, Tennessee; William B. Lockert, III, District Public Defender; and Steve Stack, Assistant District Public Defender, for the appellant, Ammon B. Anderson.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General; and Robert S. Wilson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, indicted for aggravated sexual battery of a ten-year-old child, entered a *nolo contendere* plea of guilty to attempt to commit aggravated sexual battery, reserving as a certified question of law whether the case against him should have been dismissed because the State lost or destroyed the tape recording of his interview with social workers and a police investigator. After a thorough review of the record, we conclude that the loss of the tape recording did not unfairly prejudice the defendant's case. Accordingly, we affirm the defendant's conviction.

## FACTS

The victim in this case, C.B.,[1] is a mentally handicapped child.[2]  In August 1999, the ten-year-old victim, along with her brothers and her mother, resided in the same Cheatham County household as the defendant, fifty-six-year-old Ammon B. Anderson. According to the State, the "very sexually aggressive" victim had a habit of masturbating by performing what the district attorney general described as a "hump and bump" on the defendant's leg, with the defendant doing nothing to stop her. The defendant acknowledged sexual contact with the victim in a September 22, 1999, interview at the Cheatham County Department of Children's Services ("DCS") with caseworker Susan Roberts and Cheatham County Sheriff's Deputy Sergeant Floyd Duncan. Although Roberts tape-recorded the interview, the tape was later lost. At the conclusion of the interview, however, Sergeant Duncan summarized the defendant's admissions into the following written statement, signed by the defendant: "I remember 5 or 6 times sexual contact with [C.B.], most all of it was her riding on top of me and touching my penis. I should have reported this behavior and gotten help."

On December 7, 1999, the Cheatham County Grand Jury indicted the defendant with aggravated sexual battery of a child under the age of thirteen, a Class B felony, for his sexual contact with the victim.[3]

The defendant filed motions to dismiss the indictment, and to suppress the written statement, based on the loss of the tape recording of his interview at DCS. The trial court held a hearing on both motions on April 14, 2000. Patty Oldham, team leader at the Cheatham County Department of Children's Services, testified that former DCS caseworker Susan Roberts, Cheatham County Sheriff's Deputy Sergeant Floyd Duncan, and a student, Deborah Pickett, had been present at the interview with the defendant. After the interview, Roberts had told Oldham that they had been able to get a confession in the case. Although Roberts had tape-recorded the interview, Oldham had not been able to locate the tape, and could not explain what had happened to it. Roberts had given

---

[1] It is the policy of this court to identify minor victims of sexual offenses by initials only.

[2] The victim has Down's Syndrome.

[3] Aggravated sexual battery is defined in Tennessee Code Annotated Section 39-13-504(a) (1997) as "unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances: . . . (4) The victim is less than thirteen (13) years of age."

Oldham the case file when she left the department in December 1999, but Oldham had not inventoried the file and did not know whether the tape had been included with other interview tapes she had received.

The defendant testified that he had been "under real extreme nervous condition" when he gave the approximately fifteen to twenty minute interview at DCS, explaining that he was "on quite a bit of medication for depression and anxiety." He remembered signing the one paragraph statement written by Sergeant Duncan, but said that he had not read it, and that Duncan had not read it to him. Although he acknowledged that the statement was "pretty close," the defendant indicated that it did not completely reflect what had been said in the interview, in that it did not reveal that the "5 or 6 times sexual contact" had all been initiated by the victim, in which she had "sneak[ed] into [his] bed and [got] up and straddle[d] [him] and start[ed] rubbing . . . ." He said that when he made the statement, "I should have reported this behavior and gotten help," he had been referring to getting help for the victim, rather than himself.

The State called Sergeant Floyd Duncan, Jr., who stated that he had taken a statement from the defendant at the conclusion of the defendant's interview at DCS. [4] He said that he had read the defendant his rights before the interview, and the defendant indicated that he understood those rights. Duncan testified that DCS had tape-recorded the session for their purposes, and that he had not been given the tape. At the end of the session, he had reduced the essence of the defendant's admissions during the interview into the one paragraph statement, which he had then read to the defendant. The defendant indicated that he understood what had been read, made no objection to the way the statement had been worded, and signed the statement. On cross-examination, Sergeant Duncan acknowledged that they had been aware that the victim was an "aggressive sexual child" with a prior history of sexual abuse, and that that fact had been discussed with the defendant during the interview.

At the conclusion of the hearing, the trial court denied the defendant's motions, ruling that the statement was admissible, and that how much weight, if any, it should carry would be a matter for the jury to determine. Following the denial of his motions, on April 17, 2000, the defendant entered a plea of *nolo contendere* to attempt to commit aggravated sexual battery. He was sentenced to three years, suspended, and placed on three years' probation. The defendant reserved the following certified question of law:

> Whether the introduction into evidence of the Defendant's signed statement written out by state investigators when the State had lost or destroyed the original tape recording of the interview thereby preventing Defendant from introducing the exact contents of his

---

[4] It is unclear from the record whether Sergeant Duncan merely sat as a silent observer while Roberts interviewed the defendant, or whether he took an active role in questioning.

statement violates Defendant's right to a fundamentally fair trial by due process standards.

The defendant timely appealed to this court.

## ANALYSIS

Before we may address the issue presented for review, we must first consider whether we have jurisdiction to hear this appeal. See State v. Preston, 759 S.W.2d 647, 651 (Tenn. 1988). In Preston, our supreme court set forth the requirements that must be met for an issue to be properly certified for appeal. Under Rule 37(b)(2)(i), an appeal lies from a guilty plea if the final order or judgment contains a statement of the dispositive certified question of law reserved by the defendant, which clearly identifies the scope and limits of the legal issue reserved. See id. at 650; see also State v. Pendergrass, 937 S.W.2d 834, 836-37 (Tenn. 1996). The order or judgment must state that the certified question was expressly reserved as part of a plea agreement. It must further state that the trial court and the State consent to the agreement, and agree that the issue is dispositive of the case. Preston, 759 S.W.2d at 650. However, if the appellate court does not agree that the question is dispositive, appellate review must be denied. Id.

The final judgment in this case complies with the requirements set forth in Preston, stating the exact question of law that the defendant reserved, that the State and the trial judge consented to the plea, and that both the State and the trial judge agreed that the question was dispositive of the case. An issue is dispositive if, based on the resolution of the issue, this court must either affirm the conviction, or reverse and dismiss. State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). "That is to say that, if we should find the appellant's position correct, there would be no case to prosecute as there would be no proof to convict." State v. George Milton Brooks, No. 02C01-9804-CC-00116, 1998 WL 775649, at *3 (Tenn. Crim. App. Nov. 6, 1998), perm. to appeal denied (Tenn. 1999). The record in this case reflects that the State acknowledged at the guilty plea hearing that without the statement of admission, it would have no evidence to present against the defendant, because the victim would be unable to testify. We therefore conclude that we have jurisdiction to consider the issue on appeal.

The defendant contends that the trial court erred by denying his motion to dismiss the indictment. He argues that the loss of the tape recording deprived him of evidence that was essential to his defense, preventing him from receiving a fair trial. The State disagrees, arguing that the defendant has failed to demonstrate that his right to a fair trial was impeded by the loss of the tape recording.

In State v. Ferguson, 2 S.W.3d 912, 917 (Tenn. 1999), our supreme court adopted a balancing approach for courts to use to determine when the loss or destruction of evidence has deprived a defendant of his fundamental right to a fair trial. Id. at 917. Under this approach, the first step is to determine whether the State had a duty to preserve the evidence. As a general rule, "the State has

-4-

a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim. P. 16, or other applicable law." Id. If the proof shows that the State had a duty to preserve the evidence, and that the State failed in its duty, the court must then consider the following factors which bear upon the consequences of the State's breach of its duty: (1) the degree of negligence involved; (2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used to support the conviction. Id. If the court concludes, after consideration of all the factors, that a trial without the missing evidence would not be fundamentally fair, the court has the option of dismissing the charges against the defendant. Id.

Under Ferguson, therefore, we must first determine whether the State had a duty to preserve the tape recording. The defendant argues that it did, asserting that the recording would have been discoverable, under Tennessee Rule of Criminal Procedure 16(a)(1)(A), as a statement of the defendant. The State disagrees, arguing that no duty exists because the defendant failed to show that the tape recording was "materially exculpatory." The State argues that the tape contained nothing that would have cleared the defendant of guilt.

In Ferguson, a DWI case, the missing evidence was a videotape recording of the defendant's field sobriety tests. The defendant argued that the videotape would have provided support for his claim that he had been experiencing a migraine, which affected his vision and coordination, at the time of his arrest. To determine the boundaries of the State's duty to preserve evidence, the Ferguson court looked for guidance to a 1984 United States Supreme Court decision, quoting from it as follows:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must possess an exculpatory value that was apparent before the evidence was destroyed, and be of such nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

Id. (quoting California v. Trombetta, 467 U.S. 479, 488-89, 104 S. Ct. 2528, 2533-34, 81 L. Ed. 2d 413 (1984)). The Ferguson court found that the exculpatory value of the videotape was "tenuous." 2 S.W.3d at 918. Nonetheless, it concluded that the State had a duty to preserve it, writing:

> Though the videotape was probably of marginal exculpatory value, it was at least "material to the preparation of the defendant's defense" and might have led the jury to entertain a reasonable doubt about Ferguson's guilt. Because the videotape may have shed light on his appearance and condition on the morning in question, the State had a duty to preserve the videotape as potentially exculpatory evidence.

-5-

Id.

The tape recording in this case, similar to the videotape in <u>Ferguson</u>, may have "shed light" on the defendant's condition and the circumstances surrounding his statement of admission, by providing details and nuances that Sergeant Duncan may have omitted. At the suppression hearing, the defendant testified that in his interview, he had told Roberts and Duncan that when the victim would climb on top of him, he would "throw her off and tell her go on," a fact which was not included in the written statement of admission. Furthermore, the recording was clearly discoverable under Rule 16(a)(1)(A) of the Tennessee Rules of Criminal Procedure, as a relevant recorded statement of the defendant within the control of the State. Therefore, we believe that the State had a duty to preserve the tape recording, and that it breached that duty by allowing the tape to be destroyed or lost.

Next, we must determine the consequences of the State's breach of its duty to preserve the tape recording. The first factor to be considered is the degree of negligence involved. In this regard, we note that Sergeant Duncan testified that he had not taken custody of the tape, and that DCS supervisor Patty Oldham made it clear that the district attorney general had never received the tape from DCS. Oldham stated that she had not realized that the tape was missing until the case neared trial and the district attorney general asked her for the case file. When she gathered the file, she had been unable to locate the tape among the materials that Susan Roberts had turned over to her when she left the department. Although the defendant suggests that DCS may have intentionally destroyed the tape in an effort to prejudice his case, there is no proof in the record that the tape's loss was the result of anything other than simple negligence.

The second factor to consider is the significance of the missing evidence, "in light of the probative value and reliability of secondary or substitute evidence." According to the defendant, the missing tape contained both inculpatory and exculpatory or self-serving statements. Purely self-serving declarations by a defendant are generally not admissible. <u>State v. King</u>, 694 S.W.2d 941, 945 (Tenn. 1985); <u>Moon v. State</u>, 146 Tenn. 319, 372, 242 S.W.2d 39, 54 (1921); <u>State v. Belser</u>, 945 S.W.2d 776, 784 (Tenn. Crim. App. 1996); <u>State v. Wiseman</u>, 643 S.W.2d 354, 366 (Tenn. Crim. App. 1982). When a defendant's statement consists of both exculpatory and inculpatory portions, however, and the prosecution introduces a part of it into evidence, the defendant is then entitled to introduce the entire statement, including any exculpatory or self-serving portions that the statement may include. <u>State v. Keough</u>, 18 S.W.3d 175, 182 (Tenn.), <u>cert. denied</u>, ___ U.S. ___, 121 S. Ct. 205, 148 L. Ed. 2d 144 (2000) (citing <u>Espitia v. State</u>, 199 Tenn. 696, 288 S.W.2d 731, 733 (Tenn. 1956)); <u>State v. Robinson</u>, 622 S.W.2d 62, 71 (Tenn. Crim. App. 1980). Thus, it is clear that the defendant would have been entitled to introduce the whole of the tape recording, including any exculpatory statements that he may have made, upon the State's introduction of any portion of the tape.

What is not quite as clear is whether the defendant would have been entitled to introduce the tape recording upon the State's introduction of his statement of admission alone. Rule 106 of the Tennessee Rules of Evidence states:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

In Keough, the defendant gave oral and written statements of admission. 18 S.W.3d at 181. His first statement, which was oral, contained no exculpatory material. When the police detective who was interviewing him was called away, the defendant then gave a written statement, containing both exculpatory and inculpatory portions, to different detectives. Id. At trial, the State presented the first detective, who testified regarding the defendant's oral statement. The State did not introduce the written statement, and the trial court refused to allow defense counsel to cross-examine the detective regarding the written statement. Id. at 182. On appeal, our supreme court concluded that Rule 106 did not require that the written statement be introduced because the defendant had, in essence, given two separate statements, one oral and one written. Id. The court noted that a Miranda warning had been given before each statement, and that different detectives had conducted the two interviews. Id.

The situation in the case at bar differs from that of Keough. Although it is unclear from the record whether Sergeant Duncan actively participated in the DCS interview of the defendant, or merely sat as a silent observer, it is undisputed that he was present throughout the entire interview, and that he gave only one Miranda warning, at the beginning of the process. Presumably, therefore, the defendant would have been allowed to introduce the tape recording upon the State's introduction of the written statement of admission, on the premise that the statement of admission, written out by Sergeant Duncan as an attempt to summarize the defendant's admissions during the interview, was merely a continuation or culmination of the tape recorded interview.

Regardless, we conclude that the tape recording was not that significant to the defendant's case. Unlike the videotape in Ferguson, which showed Ferguson's condition at the time of his DWI arrest, the evidence here was not irreplaceable. As the State points out in its brief, the defendant would have had the opportunity at trial to cross-examine Sergeant Duncan, and could have called Susan Roberts or Deborah Pickett, both witnesses to the interview, to testify as to what had been said. See State v. Caldwell, 696 S.W.2d 541, 542 (Tenn. Crim. App. 1985) (concluding that fact that police officer did not record everything defendant told him, including some exculpatory statements, did not render recorded portion inadmissable, because defendant had been able to elicit exculpatory material during cross-examination of police officer). In our view, the loss of the tape did not seriously hamper the defendant in presenting his claim that the victim had initiated the contact.

The third factor to be considered is the sufficiency of the convicting evidence. In this case, the defendant signed a written statement in which he admitted "5 or 6" occasions of sexual contact, in which the victim had "ridden" him and touched his penis. In the suppression hearing, he testified that the victim would "get up and straddle me and start rubbing and I'd have to throw her off and tell her go on, [C.B.], before you get us in some kind of trouble." The defendant further testified that

the victim used to wake him by playing with his penis.  The evidence presented was sufficient as a matter of law to support the defendant's conviction of attempt to commit aggravated sexual battery.

## CONCLUSION

After considering the above factors, we conclude that the loss of the tape recording did not unfairly prejudice the defendant's case, such as to deprive him of his fundamental right to a fair trial. Accordingly, the defendant's conviction of attempt to commit aggravated sexual battery is affirmed.

_____
ALAN E. GLENN, JUDGE